**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Bert Samuel STEFANSON,
Defendant-Appellant.**

**No. 80–1624.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1981.

Decided June 22, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1981.

Sanford Svetcov, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Ray Archuleta, San Francisco, Cal., for defendant-appellant.

Before TRASK and BOOCHEVER, Circuit Judges, and CURTIS,* District Judge.

CURTIS, District Judge:

Bert Samuel Stefanson appeals from a judgment of conviction for illegal possession of firearms[1] and an unregistered machine gun,[2] alleging that the district court erred in denying his motion to suppress evidence obtained from his person, his vehicle and his residence. Appellant argues that evidence taken from his person and vehicle should have been suppressed because the initial arrest was illegal; evidence

---

* Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

1. 18 U.S.C.App. § 1202(a)(1) (1968) (Vol. 4 at 1393).

2. 26 U.S.C. § 5861(d) (1968).

taken from his residence should have been suppressed because the federal magistrate failed to comply with Rule 41, Federal Rules of Criminal Procedure, when granting a telephonic search warrant.

The government urges us to affirm the judgment because substantial evidence supports the district court's judgments, both that probable cause existed to authorize the issuance of a telephonic search warrant, and that the appellant's arrest by California Park District Officers was valid under California law. We agree and consequently affirm both the district court's rulings and uphold the judgment of conviction.

## FACTS

On March 29, 1980, Officer McClain of the East Bay Regional Park District stopped and arrested appellant Stefanson for reckless or drunk driving on Highway 580 in Oakland, California, after observing him driving a pickup truck in excess of 80 miles per hour, weaving erratically from lane to lane. Following appellant's stop at 4:25 p. m., Officer McClain seized weapons and ammunition, which were in plain view, from appellant's person and his truck. While McClain removed two loaded .380 caliber pistols and an ammunition magazine containing twenty rounds from appellant's belt, Officer Spradlin spotted and seized a .380 caliber automatic pistol (machine gun) protruding from under the seat of appellant's truck.

Several hours later, ATF Agent William Bertolani made a telephonic application for a search warrant covering appellant's residence, relying both on evidence obtained from the traffic stop of Stefanson, and on facts drawn from appellant's criminal record. Magistrate Rothwell found probable cause to exist and authorized the search warrant, although he recorded only a portion of the telephone call because of problems with the recording device. The warrant issued at 9:45 p. m., and Stefanson's residence was searched at 10:10 p. m., a search in which agents seized two shotguns, ammunition and other contraband.

Two days after granting the search warrant, March 31, 1980, Magistrate Rothwell prepared a transcript of Bertolani's telephone call, using both the tape-recorded conversation, and his own memory. When the defense challenged the accuracy and validity of the magistrate's transcript, the parties obtained the original tape recording, listened to it, and a second transcript was prepared by the government which the defense stipulated was accurate. Briefly, the stipulated transcript shows the agent submitted the following facts in applying for the warrant:

1. That Agent Bertolani, who had sixteen years of experience, was part of a task force investigating the Hells Angels Motorcycle Club, and that Stefanson was one of thirty-two persons currently on trial as a result of that investigation.

2. That on June 13, 1979, Stefanson was indicted and his residence was searched pursuant to a warrant; that his wife Charlene was present and was arrested when an automatic pistol (machine gun) and some drugs were found.

3. That Stefanson had prior felony convictions in 1973 for both firearm, explosives and drug offenses.

4. That on March 21, 1980, eight days before the warrant application, shots were fired near Stefanson's residence; and that Stefanson, thereafter, came out of the residence and entered a car; and that the car was stopped and both Stefanson and his wife were inside.

5. That on March 29, 1980, earlier the same day as the warrant application, Stefanson was stopped in his car for reckless or drunk driving while driving 80 miles per hour in an erratic manner; and that two loaded pistols, a machine gun and an ammunition belt for the machine gun; and that each weapon seized from Stefanson was manufactured outside California and firearm records showed that no guns were registered to him; and that one of the guns had its serial number obliterated by drilling; and that Stefanson left a plastic bag with fourteen "seconal" capsules in the backseat of the police car after his arrest.

6. That in Agent Bertolani's experience, persons who have firearms also keep ammunition, parts and holsters in their residences; and that in Bertolani's experience, persons who possess drugs often keep drug paraphernalia, along with their main supply of drugs at their residences.[3]

Because of the alleged defects in the magistrate's transcript, an evidentiary hearing was held. Magistrate Rothwell testified that on March 29, 1980, shortly before 10:00 p. m., Agent Bertolani telephoned him at home for a search warrant. The magistrate then testified that while he did not have a current copy of Rule 41 available, nor was he familiar with its contents regarding telephonic applications, he, nevertheless, was aware generally that the application was to be recorded and later transcribed. He specifically recalled the call, and that Agent Bertolani declared the truth of his statements under penalty of perjury. The declaration of oath was not recorded on the tape, possibly because of machine failure, or because of accidental erasure when the magistrate replayed the call for himself. However, the magistrate specifically recalled the declaration occurring at the end of the call, but only noted its absence from the tape during subsequent transcription two days later.[4] Magistrate Rothwell testified that he did not put Agent Bertolani under oath at the beginning of the conversation, admitting he was not aware that Rule 41 so required; however, he testified he did not intentionally disregard it. Magistrate Rothwell confirmed in his transcript that he attributed to Agent Bertolani the statement about a need for nighttime service due to destruction of evidence, because the agent verified as much by stating "yes" in response to the magistrate's inquiry about it.

Appellant's motion to suppress evidence obtained both from the search of the truck and his residence was denied after holding an evidentiary hearing. Thereafter, Stefanson pled guilty to Count 1 (felon in possession of two loaded pistols found on his person during the truck stop). During trial on Count 2 (possession of an unregistered machine gun), the machine gun found in Stefanson's car and the ammunition magazine for it found on his person were introduced into evidence. In addition, the shotguns found in the master bedroom of Stefanson's home were introduced in support of Count 3 (felon in possession of two shotguns). Corroborative evidence in the form of ammunition found in the residence was also presented. The jury convicted appellant on Counts 2 and 3, and appellant appeals therefrom.

## DISCUSSION

1. Validity of telephonic search warrant.

■ We first examine the issue of whether the search warrant was valid despite certain noncompliances with Rule 41. Appellant alleges that the process by which Agent Bertolani secured the telephonic search warrant violated Rule 41 because Magistrate Rothwell failed to place Agent Bertolani under oath *before* accepting testimony from him. Furthermore, appellant alleges that the magistrate failed to record the oath altogether. Consequently, he contends that all evidence seized thereunder should have been suppressed by the district court. This argument is unsupportable on the facts and the law.

Rule 41(c)(2)(D) states:

When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall *immediately* place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice recording device is available, the Federal magistrate shall record by means of such

---

**3.** The district court found these facts sufficed to establish probable cause to issue the telephonic search of Stefanson's residence.

**4.** Agent Bertolani and Assistant U. S. Attorney Dondero confirmed by declaration that the magistrate had obtained a declaration under penalty of perjury from Bertolani. Appellant agreed that the government could submit this testimony by offer of proof without cross examination.

device all of the call after the caller informs the Federal magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. If a voice recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a longhand verbatim record is made, the Federal magistrate shall file a copy with the court. (Emphasis added.)

Only one case directly supports appellant's rather technical reading of this rule. *United States v. Shorter*, 600 F.2d 585 (6th Cir. 1979). Here the sixth circuit reversed the trial court's denial of a motion to suppress evidence secured by a telephonic search warrant because the oath was given after the oral information, rather than immediately before it. We, in the ninth circuit, however, do not follow this construction of Rule 41, but, instead, have adopted the standard which declares that unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where,

> (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule. *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir. 1978); *accord e. g., United States v. Mendel*, 578 F.2d 668, 673–674 (7th Cir. 1978); *United States v. Brown*, 584 F.2d 252 (8th Cir. 1978); *United States v. Gitcho*, 601 F.2d 369, 372 (8th Cir. 1979); *see also* Rule 52(a), Federal Rules of Criminal Procedure.

Under this standard, the suppression of evidence seized by agents pursuant to the search warrant would have constituted reversible error. Consistent with this analysis, the district court ruled that the oath was given, though not recorded. The undisputed testimony of Magistrate Rothwell, Agent Bertolani and Assistant U. S. Attorney Dondero supports this fact. Since the

violation of Rule 41 here was neither deliberate nor prejudicial, only technical, and since the warrant was supported by an oath of the affiant, the Fourth Amendment warrant requirement was substantially satisfied.

Appellant next attacks the telephonic search warrant's validity because the magistrate failed to make a verbatim transcription of the conversation between affiant Bertolani and himself, as required by Rule 41. Rule 41 does state in pertinent part that:

> If a voice recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court.

This contention is without merit. Magistrate Rothwell testified he dictated the probable cause statement from the tape of the original conversation supplemented by his memory. Furthermore, he testified that no conflicts existed between the original tape and his memory of the events, but that if the taped conversation was unclear, it was deleted from the final transcription. Finally, the magistrate certified the accuracy of the telephone conversation to the district court. Not only is all this testimony undisputed, but appellant's counsel stipulated to the substantial accuracy of the verbatim transcription. Although the opinion has been withdrawn pending a rehearing, the ninth circuit has recently held that while a failure to record the entire telephonic conversation violates Rule 41(c)(2)(D), it is merely a technical violation, and would not justify suppression of evidence otherwise legally obtained. *United States v. Johnson*, 623 F.2d 121, 125 (9th Cir. 1980); *cf. Sherrick v. Eyman*, 389 F.2d 648, 652 (9th Cir. 1968), and *Boyer v. State of Arizona*, 455 F.2d 804, 806 (9th Cir. 1972) (Holding that a failure to record or memorialize oral testimony in supplementing a written affidavit is not constitutional error). Finally, appellant has not established that he suffered any prejudice from this

irregularity under Rule 41. In fact, the district court ruled that because the transcript was substantially accurate and because the magistrate had not acted in bad faith in transcribing the taped conversation, the appellant had suffered no substantial prejudice.

Consequently, the district court did not err in refusing to suppress evidence obtained pursuant to the telephonic search warrant despite this technical irregularity under Rule 41.

■ Appellant attacks the validity of the search warrant on the basis that Magistrate Rothwell was not detached and impartial when he authorized the nighttime execution of the warrant. This contention, more technical than those already discussed, rests upon the fact that when Agent Bertolani requested permission for a nighttime execution, Rothwell, on his own initiative, inquired "(because of) The probability of destruction if not executed immediately?" Bertolani responded, "yes". Rule 41(c) requires that:

> The warrant shall be served in the daytime *unless* the issuing authority, by appropriate provision in the warrant, and for *reasonable cause shown*, authorizes its execution at times other than daytime.... (Emphasis added.)

This rule has been interpreted to require both specific authorization for an intrusive nighttime search, and that sufficient facts in the affidavit must support the magistrate's authorization. *United States v. Searp*, 586 F.2d 1117, 1122 (6th Cir.), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1978); *United States v. Sturgeon*, 501 F.2d 1270 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974); *United States v. Curry*, 530 F.2d 636 (5th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 89, 50 L.Ed.2d 93 (1976). Agent Bertolani's telephonic affidavit included the following facts supporting the need for immediate execution of the search warrant: the fear that evidence would be otherwise destroyed; that Mrs. Stefanson, appellant's wife and a co-defendant with appellant in a related case, might have begun destroying

evidence at their residence when alerted to her husband's arrest on firearms and drug charges. We have upheld even warrantless searches of homes when exigent circumstances existed to believe an associate of an arrested criminal, having learned of their confederate's arrest, had access to a residence, permitting them to destroy contraband: *United States v. McLaughlin*, 525 F.2d 517, 520–21 (9th Cir. 1975); *United States v. Fulton*, 549 F.2d 1325, 1327 (9th Cir. 1977). *A fortiori*, when a search warrant is sought, similar exigent circumstances justify an immediate nighttime execution of it. *United States v. Searp*, 586 F.2d at 1122–25.

On this basis, the district court properly ruled that a nighttime search was reasonable under Rule 41(c) and, consequently, properly refused to suppress evidence obtained by the nighttime search.

■ Appellant next contends that the evidence should have been suppressed because the oral affidavit fails to state sufficient facts to support a finding of probable cause to authorize the search warrant. This contention is clearly without merit. The affidavit contained allegations that illegal drugs had been found in appellant's house when he was absent therefrom on June 13, 1979; that appellant had several prior drug-related convictions; and that appellant illegally possessed fourteen (14) "seconal" capsules when arrested within a mile of his home on March 29, 1980. Added to these facts is the personal knowledge and experience of Agent Bertolani that persons carrying such a supply of illegal drugs are likely to have a larger cache at their residence. Based upon these facts, the magistrate was reasonable in inferring that probable cause existed to believe that appellant's home contained additional drugs. *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976); *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir. 1978). The district court, reviewing the oral affidavit, reached the same conclusion.

■ Finally, appellant challenges the district court's conclusion that the affidavit

contained facts sufficient to find probable cause to believe that appellant's home contained illegal firearms and ammunition. However, the oral affidavit contained these pertinent facts: that appellant, when arrested on the day in question, within one mile of his home, illegally possessed two pistols, a machine gun and ammunition; that appellant had prior felony convictions for possession of firearms and ammunition; that a similar machine gun was seized from appellant's residence in his absence on June 13, 1979; and that a shooting occurred outside appellant's home while he was present on March 21, 1980, eight days before appellant's arrest and the search of his home. Agent Bertolani's sixteen years of experience, also, led him to conclude that possessors of such firearms are likely to have additional weapons and ammunition at their home. Based upon these facts, the district court properly upheld Magistrate Rothwell's conclusion that probable cause existed to believe that appellant's home contained illegal weapons and ammunition.

## AUTHORIZATION FOR ARREST

2. The second issue raised by appellant in his appeal is his contention that Officer McClain, joined later by Officer Spradlin, being California Park District Police Officers are without authority under California Penal Code § 830.3(h) (1980) and California Public Resources Code § 5561 (1939) to arrest and search appellant *outside* the park district. Since the initial arrest was illegal, appellant argues, the subsequent seizure of weapons and ammunition from his person and his vehicle was illegal, and such evidence should have been suppressed.

California Penal Code § 830.3(h) (1980) regulates police officers in the regional park district, and declares:

(h) Police officers of a regional park district, appointed or employed pursuant to Section 5561 of the Public Resources Code, and officers and employees of the Department of Parks and Recreation designated by the director pursuant to Section 5008 of such code are peace officers; provided, that the primary duty of any

such peace officer shall be the enforcement of the law as such duties are set forth in Sections 5561 and 5008, respectively, of such code.

Next, appellant correctly cites Public Resources Code § 5561, and argues that this section expressly limits the authority of park district officers to the area *within* the park district. Section 5561 states:

*Police officers' powers*

The police appointed or employed by the board shall have, *within* the district for which they are appointed or employed, *all* the powers of police officers of municipal corporations except the power of serving and executing civil process. (Emphasis added.)

Without doubt, then, park district officers enjoy the same powers as municipal police officers do in the municipality, except the powers of serving and executing civil process, *within* the park district. However, their authority outside the district is not prohibited. California Penal Code § 830.-3(q) (1980) creates a statutory exception to section 5561 of the Public Resources Code. It states:

The authority of any peace officer listed in subdivisions (c) through (p), inclusive *extends to any place in the state*; provided, that except as otherwise provided in this section, Section 830.6 of this code, or Section 8597 of the Government Code, any such peace officer shall be deemed a peace officer only for purposes of his primary duty, and shall not act as a peace officer in enforcing any other law *except*:

(1) When in pursuit of any offender or suspected offender; or

(2) To make arrests for crimes committed, or which there is probable cause to believe have been committed, in his presence while he is in the course of his employment; . . . (Emphasis added.)

The undisputed facts indicate that Officers McClain and Spradlin were assigned to the East Bay Regional Park District; that appellant was arrested either *within* the park district as authorized by Public Resources Code § 5561, or outside the

district, but *within* the state by Park officers "in pursuit of an offender" or "for crimes committed . . . in his presence while he is in the course of his employment," as authorized by California Penal Code § 830.-3(q)(1), (2).

Consequently, appellant was properly arrested under California law by Officer McClain. Undisputed facts lead to the conclusion that all weapons and ammunition seized subsequent to the arrest were in plain view of the arresting officers. As a result, the district court was correct in holding that the arrest was lawful, and that evidence obtained thereby should not have been suppressed.

### CONCLUSION

Because substantial evidence exists to support both of these district court rulings, we affirm them in all respects.

AFFIRMED.