UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen Marvin ROME,
Defendant-Appellant.

No. 86–1359.

United States Court of Appeals,
Tenth Circuit.

Jan. 15, 1987.

Robin D. Fowler (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Asst. U.S. Atty., Wichita, Kan., for plaintiff-appellee.

Charles A. O'Hara, of O'Hara, O'Hara & Tousley, Wichita, Kan., for defendant-appellant.

Before BARRETT, LOGAN and BALDOCK, Circuit Judges.

BARRETT, Circuit Judge.

This is an appeal from a contingency plea of guilty entered by Stephen M. Rome (Rome) to one count charging a violation of 21 U.S.C. § 841(a)(1), possession of cocaine with intent to distribute. Rome reserved the right to appeal the trial court's denial of his motion to suppress the search of his residence and the seizure of money, drug paraphernalia and cocaine.

The search in question was conducted by F.B.I. Special Agent Larry Guggisberg (S.A. Guggisberg) pursuant to a warrant authorized via telephone by U.S. Magistrate John B. Wooley (Magistrate Wooley) on April 25, 1985. At the time of the call, S.A. Guggisberg was conducting an investigation from a motel in Hays, Kansas, and Magistrate Wooley was at his home in Wichita, Kansas, a distance of more than 100 miles from Hays.

There were several telephone conversations that afternoon and evening between S.A. Guggisberg and Magistrate Wooley, and between S.A. Guggisberg's supervisor

and Magistrate Wooley, culminating in the recorded telephone conversation in which Magistrate Wooley authorized a search of Rome's residence. For some reason, the telephone conversations preceding the one in which the warrant was authorized were not recorded or were later erased.

When Magistrate Wooley authorized the search of Rome's residence, he did not immediately fill out the original search warrant in his possession, but had the telephone conversation transcribed and the warrant filled out one or two days later. S.A. Guggisberg did not have access to a proper warrant form at the time of the telephone call, which Magistrate Wooley knew, and was waiting for his supervisor to teletype a form to the Hays, Kansas, Police Department. When S.A. Guggisberg read his affidavit in support of the search warrant to Magistrate Wooley over the telephone, he read from a rough draft, which he later reorganized but did not change substantively.

During the recorded telephone conversation, Magistrate Wooley gave S.A. Guggisberg detailed instructions on how to fill in the warrant form when he obtained it. Magistrate Wooley then authorized the search of Rome's residence at "Victoria, Kansas," once the warrant was obtained and filled out. At one point in the conversation, Magistrate Wooley authorized S.A. Guggisberg to seize cocaine and paraphernalia, and at another point seemed to authorize S.A. Guggisberg to seize scales, bags, and money. The written search warrant was more specific both as to the address of Rome's house and as to the items to be seized. The "money," authorized orally, for example, was shown on the warrant as sixty-five $100.00 bills. The money was discussed in some detail in the recorded telephone conversation, however. This conversation makes it clear that there had been some preliminary discussion of the same subject matter between Magistrate Wooley and S.A. Guggisberg (or between Magistrate Wooley and someone else).

After Magistrate Wooley found that reasonable grounds existed to dispense with a written affidavit and that probable cause existed for the search and seizure, the search was duly conducted, the items described in the warrant were seized, and the warrant was returned to Magistrate Wooley. Rome was arrested and charged with violations of 21 U.S.C. § 841(a)(1), possession of cocaine with intent to distribute. On December 17, 1985, Rome pleaded guilty to one count of the superseding indictment and reserved his right to appeal the denial of his motion to suppress the search of his home.

On appeal, Rome contends that the search violated various provisions of Fed.R. Crim.P. 41(c)(2), 18 U.S.C., which governs searches and seizures executed pursuant to a telephone affidavit. The net effect of these violations, Rome argues, is to render the search warrant null and void, inasmuch as the warrant fails to describe the place to be searched or the things to be seized with particularity and the oral affidavit fails to provide probable cause for the search of Rome's residence at 701 Grant, Victoria, Kansas. Rome argues that cumulatively, these procedural errors violated his Fourth Amendment rights.

### I.

Fed.R.Crim.P. 41(c)(2) provides the procedure for obtaining a search warrant when it is not reasonable for a federal law enforcement officer or attorney for the Government to appear personally before a federal magistrate with a written affidavit. The pertinent parts of Rule 41(c)(2) are as follows:

**(2) Warrant upon Oral Testimony.**

**(A) General Rule.** If the circumstances make it reasonable to dispense with a written affidavit, a Federal magistrate may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means.

**(B) Application.** The person who is requesting the warrant shall prepare a document to be known as a duplicate original warrant and shall read such duplicate original warrant, verbatim, to the Federal magistrate. The Federal magis-

trate shall enter, verbatim, what is so read to such magistrate on a document to be known as the original warrant. The Federal magistrate may direct that the warrant be modified.

**(C) Issuance.** If the Federal magistrate is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the Federal magistrate shall order the issuance of a warrant by directing the person requesting the warrant to sign the Federal magistrate's name on the duplicate original warrant. The Federal magistrate shall immediately sign the original warrant and enter on the face of the original warrant the exact time when the warrant was ordered to be issued. The finding of probable cause for a warrant upon oral testimony may be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

**(D) Recording and Certification of Testimony.** When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice recording device is available, the Federal magistrate shall record by means of such device all of the call after the caller informs the Federal magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. If a voice recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a longhand verbatim record is made, the Federal magistrate shall file a signed copy with the court.

The rule's requirements are clear: The person requesting a warrant must prepare a duplicate original warrant and read it verbatim to the federal magistrate; the federal magistrate must enter what is read, verbatim, on the original warrant and "immediately" sign it; the caller must be under oath from the inception; a recorded or stenographic record of the call must be made and filed in the court record.

The record in the case before us shows that the Government failed to comply fully with the requirements of Rule 41(c)(2). Specifically, S.A. Guggisberg and his supervisor discussed the search with Magistrate Wooley in one or more unrecorded telephone conversations. When they recorded the conversation that forms the basis for the search warrant, some of the information which had already been given to Magistrate Wooley was not reiterated. S.A. Guggisberg read from a rough draft of an affidavit for search warrant, but the warrant itself is more specific in its description of Rome's address and the items to be seized. Moreover, S.A. Guggisberg testified that he later reorganized the affidavit. Thus, there is variation between the contents of the affidavit and the contents of the original and duplicate original search warrants. The requirement that the affidavit be read verbatim and the original warrant be a verbatim copy of the information in the affidavit, has not been met.

The issue before us is whether these violations of Rule 41(c)(2) are of a magnitude sufficient to invalidate the search conducted pursuant to the rule. We have not previously decided this issue in this circuit.

We begin by stating that search warrants issued pursuant to Rule 41(c)(2) are to be judged by the same standards as any other search warrant. These standards were articulated by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), wherein the Court held that because there is no basis to believe that the exclusion of evidence seized pursuant to a warrant will have a deterrent effect on the future conduct of the issuing judge or magistrate, evidence seized in good faith reliance upon a facially valid warrant will not normally be excluded. The Court held further that

in the absence of an allegation that the magistrate abandoned his neutral and detached role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.* at 926, 104 S.Ct. at 3423.

In the instant case, Rome does not allege that S.A. Guggisberg acted recklessly or dishonestly or could not have harbored an objectively reasonable belief in the existence of probable cause. Rome does allege that Magistrate Wooley's conduct falls short of the *Leon* standard. Specifically, Rome alleges that the magistrate abandoned his detached and neutral role by participating in the described violations of Rule 41(c)(2). To assess this allegation, we must first analyze Magistrate Wooley's conduct, and then determine whether the violations of Rule 41(c)(2) in which Magistrate Wooley participated were of the magnitude Rome alleges.

Magistrate Wooley's conduct consisted of (1) participating in one or more unrecorded telephone conversations in which this search was discussed; (2) authorizing a search when he knew or should have known that S.A. Guggisberg was not reading, verbatim, from a duplicate original search warrant as required by Rule 41(c)(2)(B); (3) authorizing a search (per the recorded conversation) for "cocaine and paraphernalia and that type of thing," and, only inferentially, for money, scales and bags; (4) failing to record, *verbatim*, what S.A. Guggisberg read to him by way of affidavit onto the original warrant; and (5) failing to "immediately" sign the original warrant. These violations of Rule 41(c)(2) stem from the fact that neither Magistrate Wooley nor S.A. Guggisberg were familiar with all the requirements of the rule and neither of them had a copy of it in his possession. To make matters worse, S.A. Guggisberg did not have a duplicate original warrant in his hands when he applied for the search warrant.

■ None of these factors, however, suggest an absence of good faith on the part of either Magistrate Wooley or S.A. Guggisberg. Although we believe that F.B.I. agents should be prepared for exigencies of this type when they are in the field, such lack of preparation does not constitute bad faith. With respect to Magistrate Wooley's conduct, we hold he was not abandoning his detached and neutral function; rather, he was trying to assure that a search that might otherwise have taken place without a warrant was done correctly. This is a proper function of a magistrate and serves the ends articulated by the Court in *United States v. Leon*, 468 U.S. 897 at 921, 104 S.Ct. 3405 at 3420. Moreover, we think it reasonable to infer that S.A. Guggisberg was deeply embroiled in an investigation, and, as we pointed out in *United States v. Cuaron*, 700 F.2d 582, 588 (10th Cir.1983):

> The ... legislative history [of Rule 41(c)(2) ] demonstrates that Congress intended to encourage police to procure telephone warrants where "the existence of exigent circumstances is a close question and the police might otherwise conduct a warrantless search." [citations omitted]

Unfortunately, the issue of whether there might have been exigent circumstances was neither argued nor briefed extensively, and the record is not well developed on this point. We note, however, that according to the affidavit in support of the search warrant, Rome had plans for Saturday (the next day) and "needed all the money he could get his hands on." We infer from this that S.A. Guggisberg was under a sense of urgency to execute the search warrant that evening and that Magistrate Wooley likely appreciated this urgency. Nevertheless, we hold that there is nothing in the record that would call into question Magistrate Wooley's detachment and neutrality. In fact, he made a point of cautioning S.A. Guggisberg not to execute the search until he received the teletyped warrant form and filled it in.

## II.

■ The remaining question is whether the violations of Rule 41(c)(2) were of such

magnitude as to require exclusion, without regard to Magistrate Wooley's or S.A. Guggisberg's conduct. In *United States v. Hittle*, 575 F.2d 799 (10th Cir.1978), we held that where the additional testimony to supplement a written affidavit is given under oath but unrecorded, the fruits of the search undertaken pursuant to the warrant should be excluded. In *Hittle*, however, no facts were given in the written affidavit that would support probable cause. These essential facts were contained only in the memories of the affiant and the magistrate. We hasten to point out that in the instant case, the affidavit read over the telephone supplied facts sufficient to find probable cause for a search, without regard to the earlier conversations.

*United States v. Shorter*, 600 F.2d 585 (6th Cir.1979), is the only case cited to us which interprets strictly the requirements of Rule 41(c)(2). In *Shorter*, an agent was not placed under oath until the conclusion of his telephone affidavit. The court held that the fruits of the search must be suppressed, because the purpose of the oath was to impress upon the caller the solemnity of the proceeding. The court held that the rule's requirement that the oath be given in advance was substantive, rather than procedural. It should be noted, however, that in the same case the court held that it was harmless error that the agent failed to fill out the search warrant form in advance of his call, in the absence of evidence that the content differed materially from the contents of the original warrant.

The next year, in *United States v. Stefanson*, 648 F.2d 1231 (9th Cir.1980), the court adopted a standard for evaluating a search pursuant to Rule 41 which has been used in the majority of the circuits, including our own: "Unless there is a clear constitutional violation, non-compliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the rule." *Id.* at 1235.

In *Stefanson*, the magistrate had recorded only a portion of the telephone call requesting the search warrant because of problems with the recording device. He made a transcript two days later, using his memory to supplement the recording. Further, as in *United States v. Shorter*, 600 F.2d 585, the magistrate did not put the affiant under oath until the end of the conversation and failed to record the oath. In contrast to *Shorter*, the court found in *Stefanson* that these technical violations of the rule were neither prejudicial to the defendant nor done in intentional and deliberate disregard of Rule 41(c)(2).

In *United States v. Pennington*, 635 F.2d 1387 (10th Cir.), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325, *reh'g denied* 452 U.S. 955, 101 S.Ct. 3100, 69 L.Ed.2d 966 (1981), we adopted the same standard as the court did in *Stefanson* to review a search warrant based on a written affidavit. Although we have not been asked to do so before, we agree with appellee that this standard should also apply to searches conducted pursuant to telephone affidavit, as provided by Rule 41(c)(2). In *Pennington*, the requirements of Rule 41(c)(1) were technically violated when a search was conducted pursuant to federal warrant by a state narcotics agent, rather than by "a civil officer of the United States authorized to enforce ... any law thereof or to a person so authorized by the President...." Nevertheless, we held that such a deviation from 41(c) does not justify invoking the exclusionary rule.

In *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982), we reaffirmed that this circuit does not take a hypertechnical approach to search warrants. In *Massey*, oral testimony was taken under oath to supplement a written affidavit but was not recorded. The judge testified at the hearing on a motion to suppress that the testimony was substantially the same as that in the affidavit. We held that when the affidavit itself is sufficient to establish probable cause, the fact that oral testimony was also received but not recorded does not

require suppression of the evidence. *Id.* at 1356. These cases lead us to conclude that in the instant case, the violations of Rule 41(c)(2) were harmless.

There is nothing in the record to suggest that Rome's Fourth Amendment rights were violated. Probable cause was amply demonstrated in the recorded testimony upon which the search warrant was based, even without specific reference to Rome's address. We note that Victoria, Kansas, where Rome lived, was a town of approximately 1,200 people. Moreover, it is obvious from the recorded telephone conversation between S.A. Guggisberg and Magistrate Wooley that both of them knew whose residence was being discussed. In *United States v. DePugh*, 452 F.2d 915, 920 (10th Cir.), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805, *reh'g denied*, 409 U.S. 898, 93 S.Ct. 101, 34 L.Ed.2d 157 (1972), we held that a description of a place to be searched meets the requirements of the Fourth Amendment "if the description is sufficient to enable the officers to ascertain the place to be searched." For the sake of clarity of the record, Magistrate Wooley and S.A. Guggisburg should have referred to Rome's residence by its street address, but their failure to do so is not fatal to the warrant. "The affidavit in this case, if read in a common sense way rather than technically, shows ample facts to establish probable cause and allow the [magistrate] to issue the search warrant. The affidavit at issue here … is detailed and specific. It sets forth not merely 'some of the underlying circumstances' supporting the officers belief, but a good many of them." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). We likewise hold that the failure to record or preserve the earlier telephone conversations is harmless, since their contents do not differ materially from the contents of the affidavit, and the affidavit is sufficient on its face.

Rome's contention that the recorded affidavit's failure to describe in detail the items to be seized is similarly without merit. We held in *United States v. DePugh*, 452 F.2d 915, that a lesser standard of particularity is required on a search warrant for contraband, such as the items seized at Rome's residence. *See also*, *United States v. DeLuna*, 763 F.2d 897 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985) (holding that where the precise identity of contraband may not be known at the time the warrant is issued, a generic description is sufficient); *United States v. Grimaldi*, 606 F.2d 332 (1st Cir.), *cert. denied*, 444 U.S. 971, 100 S.Ct. 465, 62 L.Ed.2d 386 (1979) (holding that "other paraphernalia used in the manufacture of counterfeit federal reserve notes" is a sufficient description of items of contraband in a search warrant).

Once we have determined that probable cause existed for the search of Rome's residence and that no violation of Rome's constitutional rights took place, the question, as posed in *Pennington*, becomes one of whether the search was 'prejudicial' to Rome or whether Rule 41 was violated intentionally and deliberately. We hold that the search of Rome's residence did not prejudice him. Even if Rule 41(c)(2) had been followed to the letter, the search would still have taken place. There is no evidence the search would have been less abrasive had the Rule been followed. And as we have already discussed, there is no evidence that Magistrate Wooley and S.A. Guggisberg acted in intentional or deliberate disregard of Rule 41(c)(2). Given the fact that there was some evidence of exigent circumstances, we do not wish to discourage the use of Rule 41(c)(2) or to see its abandonment in favor of warrantless searches. *See, United States v. Cuaron*, 700 F.2d 582, 589–90.

## Conclusion

We do not condone careless police work and lack of preparation, nor do we hold that the failure to understand the rules governing their conduct will excuse law enforcement officers from compliance therewith. We simply hold that in this case, S.A. Guggisberg and Magistrate Wooley complied with the spirit, if not the letter, of Rule 41(c)(2). Exclusion of the

evidence obtained in the search of Rome's residence would not best serve the "remedial objectives" of the exclusionary rule, as approved by the Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We therefore hold that in this case the violations of Rule 41(c)(2) were not egregious enough to warrant the extreme sanction of exclusion.

AFFIRMED.