**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN BRENT TUCKER,

    Defendant - Appellant.

No. 01-3243

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 00-CR-40060-01-RDR)

Mark L. Bennett, Jr., Bennett, Hendrix & Moylan, L.L.P., Topeka, Kansas, for the Defendant-Appellant.

James A. Brown, Special Assistant United States Attorney (James E. Flory, United States Attorney, with him on the brief), Topeka, Kansas, for the Plaintiff-Appellee.

Before **HARTZ, ALDISERT**[*] and **HOLLOWAY,** Circuit Judges.

**HOLLOWAY**, Circuit Judge.

---

[*]The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

## I

Defendant/appellant Steven Brent Tucker and co-defendants Laura Cornelius and Melissa Paxton were indicted on three counts: conspiracy to manufacture in excess of 500 grams of a mixture containing methamphetamine in violation of 21 U.S.C. § 846; manufacturing in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1); and possession of a listed chemical, ephedrine, with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1).[1] A motion to suppress evidence, which is the subject of this appeal, was denied on September 1, 2000. Tucker entered into a conditional plea agreement on March 27, 2001, which resulted in dismissal of the indictment and the filing of a criminal information charging him with a single count of conspiracy to manufacture a mixture containing methamphetamine. He was sentenced to 96 months' imprisonment, three years' supervised release and a special assessment of $100.00. As permitted under the terms of his plea agreement, he now appeals the denial of his motion to suppress evidence.

## II

On August 18, 2000, the district court held a hearing on pretrial motions of

---

[1]The statute has been amended since the indictment so that this last provision is now found in § 841(c)(1).

defendants Tucker and Cornelius. On September 1, 2000, the court entered a written Memorandum and Order, I R. Doc. 96. This written order made the judge's findings and conclusions, disposing of the motions. We will first summarize the primary findings and conclusions.

On May 10, 2000, Detective Miller of the Lawrence Police Department (LPD) received a call from a bail bondswoman advising that she had written a bond for a Ms. Paxton which was about to expire. She gave Miller Paxton's address, a trailer in a trailer court in Lawrence. The bondswoman said that she believed there was a methamphetamine lab at the residence, and she requested police assistance in apprehending Paxton. Miller determined that the trailer was rented to defendant Tucker.

An officer of the LPD contacted Drug Enforcement Administration (DEA) Agent Hanzlik for assistance. Hanzlik was certified to process and dispose of materials and chemicals used in the production of methamphetamine. None of the officers of the LPD were certified to handle the materials. Detective Miller and other LPD officers began surveillance on the trailer at about 7:00 p.m., and Miller was in charge of this operation. Hanzlik proceeded eventually to the area of the trailer during the evening of May 10 and assisted the surveillance.

Detective Miller, after determining that Paxton was at the trailer, left to obtain a warrant for search of the trailer for Paxton. At about 11:00 p.m. officers noticed that two individuals, later identified as Tucker and Paxton, left the trailer and proceeded to a

nearby Wal-Mart. Hanzlik and a detective of the LPD followed Paxton and Tucker to the store. The officers entered the store and saw Paxton and Tucker purchase several items used in the production of methamphetamine.

Detective Miller returned with the search warrant at about midnight and learned about the Wal-Mart trip. At that time the officers involved in the operation decided to obtain another search warrant rather than serve the one which had been signed. They decided to obtain a warrant to search the trailer for methamphetamine and instrumentalities of its manufacture. Hanzlik gave information to Detective Miller concerning what he had seen at the Wal-Mart. Miller returned to the LPD and prepared the affidavit and warrant. This warrant was signed by a state judge at 4:00 a.m. on May 11, 2000, and it provided that it was to be executed "forthwith, within ninety six (96) hours" of its issuance. Prior to executing the warrant, Hanzlik offered the assistance of a DEA team, but Detective Miller declined his offer.

At the time the decision was made to execute the warrant, the officers had some concern that residents of the trailer might be starting a methamphetamine cook. Seven LPD officers and DEA Agent Hanzlik entered the residence at 5:10 a.m. LPD officers formed the entry team and made the initial entry into the trailer. Detective Miller and Agent Hanzlik were among the last to enter. The officers found Tucker and Paxton in the living room and defendant Cornelius in a bedroom. A significant methamphetamine lab was found in the trailer.

Given the presence of the lab, Agent Hanzlik and Detective Miller agreed that Hanzlik should take over the case. He collected the evidence and processed the scene. Miller conducted an interview with Paxton, and Hanzlik was present during a portion of that interview. Information from Paxton led to another search warrant for search of a storage unit rented by Cornelius. Other items used in the manufacture of methamphetamine were found there. All items seized at the trailer and the storage unit were sent to the DEA lab in Chicago for processing.

Prior to the execution of the search warrant, neither Agent Hanzlik nor Detective Miller were aware of the restrictions of Fed. R. Crim. P. 41. (The pertinent portion of Fed. R. Crim. P. 41(c)(1) provides that the warrant shall be served in the daytime unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime.) The Memorandum and Order noted that defendants Tucker and Cornelius contended that because the search warrant was executed at night, search of the trailer was unreasonable and violated their Fourth Amendment rights. Specifically the defendants argued that execution of the warrant was in violation of Fed. P. Crim. P. 41(c)(1). The government contended that the provisions of 21 U.S.C. § 879 (within the provisions concerning drug abuse prevention and control) prevail over the requirements of Rule 41, making the search proper. The government argued further that the requirements of Rule 41 do not apply in any event because the search was not "federal in character." Finally the government said that even

if the search were "federal in character" the evidence seized would not necessarily need to be suppressed.

The Memorandum said that Tucker raised an argument at the hearing that in light of the recent decisions of the Supreme Court in *Wilson v. Arkansas*, 514 U.S. 927 (1995), and *Richards v. Wisconsin*, 520 U.S. 385 (1997), the provisions of 21 U.S.C. § 879 are unconstitutional.

The Memorandum then considered whether the search was "federal in character" because "[w]hen a search is state in character, the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal prosecution." *United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir. 1992). It noted that a search is designated as state or federal, based on the amount of involvement of federal and state officials. The district judge concluded "we are presented with a close question." Memorandum and Order at 9. The operation clearly began and proceeded almost to its conclusion as a state operation. Agent Hanzlik finally gained control of the operation. Nevertheless, earlier Hanzlik "played an active role in the investigation." *Id.* Hanzlik actively assisted state officers with surveillance, and he related to Detective Miller all of the information obtained when he followed the two individuals from the residence to the nearby store. *Id.* at 9. The judge said "we must conclude that this search must be treated as if it were exclusively federal." *Id.* at 10. He therefore turned to the application of 21 U.S.C. § 879 and Fed. R. Crim. P. 41.

The judge noted that Rule 41 directs that a ". . . warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. Fed. R. Crim. P. 41(c)(1)." The Memorandum cited Fed. R. Crim. P. 41 (h), defining "daytime" as "the hours from 6:00 a.m. to 10:00 p.m., according to local time."

The Memorandum noted that 21 U.S.C. § 879 provides that a

> search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or the United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

The Memorandum said that in *Gooding v. United States,* 416 U.S. 430, 439, 447 n. 27 (1974), the Court held that the provisions of section 879 prevail over Rule 41 when controlled substances are involved. Memorandum and Order at 11. And the Memorandum said that the statute makes no distinction between day or night as opposed to other statutes or rules such as Rule 41, which requires daytime service unless the issuing authority, by appropriate provision in the warrant authorizes its execution at a time other than daytime.

The judge concluded that in accord with *Gooding*, he must hold that the provisions of 21 U.S.C. § 879 prevail over the prohibitions of Rule 41, rejecting the defendants' contention that 21 U.S.C. § 879 is unconstitutional in light of *Wilson* and *Richards*. Memorandum and Order at 13-15. While the factor of a nighttime search was said to be related to the reasonableness analysis under the Fourth Amendment, 21 U.S.C. § 879 was

held to be constitutional, and the instant search was therefore held to fall within the statute's parameters, rendering the defendants' arguments based on Rule 41 meritless. The judge said that the warrant's provision that it be served "forthwith" and other circumstances showed that the state judge authorized a nighttime search. The judge found that under the totality of the circumstances the seized evidence should not be suppressed for alleged violation of Rule 41. He said that the search was reasonable under the Fourth Amendment and that the record "fails to reveal much in the way of prejudice to the defendants." Memorandum and Order at 16. The Memorandum stated that even if the search violated the Fourth Amendment, the fruits of the search were admissible under the exception of *United States v. Leon*, 469 U.S. 897 (1984). Memorandum and Order at 18. The motions to suppress were denied.

We turn to the issues raised on appeal by defendant Tucker.

### III

### A

Tucker vigorously argues that the nighttime execution of the warrant for the search of his trailer was unconstitutional. He asks this court to reverse the denial of his motion to suppress the evidence seized as a result of that search. Mr. Tucker's argument does not take issue with the judge's subsidiary factual findings. Because we are thus presented only with a legal issue – the ultimate question of the reasonableness of the

search under the Fourth Amendment – our review is *de novo*. *E.g., United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999).[2]

It is true that "[a]t common law, prior to the adoption of the Bill of Rights there was a strong aversion to nighttime searches." *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir. 1979). This aversion was then and is now primarily focused on intrusions into the home. *Id.* "'Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form.'" *Id.* (quoting *Monroe v. Pape*, 365 U.S. 167, 210 (1960) (Frankfurter, J., concurring and dissenting)).

As we noted in *Gibbons*, because of this deeply held aversion to nighttime searches of the home, "[i]n a large number of jurisdictions statutes or court rules restrict the execution of search warrants to daytime hours, absent special circumstances showing the need for a nighttime search." 607 F.2d at 1326. On the other hand, in Kansas and

---

[2]Much of the evidence and argument at the suppression hearing was directed to the issue of whether state or federal law should be applied to the search. The district court concluded that the search must be considered federal in character because of the participation of Agent Hanzlik. Although the judge described this as a "close question," the government does not suggest on appeal that the district judge erred in this conclusion. Accordingly, we will treat the search as governed exclusively by federal law. Indeed, we would have been presented with only a federal constitutional issue in any event. When a search is state in character, "the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal prosecution." *United States v. Gibbons*, 607 F.2d 1320, 1325 (10th Cir. 1979). But because 21 U.S.C. § 879 gives such broad statutory authority for nighttime searches in federal drug cases, as we discuss below, neither state nor federal statutes would prohibit this nighttime search, which we must evaluate only against the constraints of the Fourth Amendment.

some other states no statutory limitation is put on nighttime searches.[3] Nevertheless, "[r]elatively little attention has been given to the matter of . . . whether there are special limitations upon nighttime searches flowing from the Fourth Amendment." Wayne R. LaFave, *Search and Seizure* § 4.7(b) at p. 590 (3d ed. 1996).

The constitutional issue is the only issue presented here because of the permissive approach of the relevant federal law. Seeming to reflect the centuries old aversion to nighttime searches, a federal rule, Fed. R. Crim. P. 41(c)(1), directs that a search warrant must be executed in the daytime unless a federal or state judicial officer specifically authorizes execution of the warrant at night "for reasonable cause shown." But just as Kansas and some other states have taken a divergent path granting considerable power to law enforcement, a federal statute dealing with controlled substance crimes provides that:

> A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

21 U.S.C. § 879. The Supreme Court has held that this statute "requires no special showing for a nighttime search, other than a showing that the contraband is likely to be on the property or person to be searched at that time." *Gooding v. United States*, 416 U.S. 430, 458 (1974). The Court held that the more restrictive provisions of Rule 41(c)(1) are "not applicable to searches governed by the more specific narcotic search statutes." 416

---

[3]The Kansas statute in full simply states: "A search warrant may be executed at any time of any day or night." Kan. Stat. Ann. § 22-2510 (2000).

U.S. at 439.[4]  Thus, when federal authorities seek evidence of controlled substance crimes, 21 U.S.C. § 879 requires no special showing for nighttime execution of a search warrant other than, as *Gooding* held, a showing that the contraband is likely to be on the person or property to be searched at that time.

In sum, in light of the findings made, the showing under § 879 was proper.

**B**

However, in his brief defendant argues that 21 U.S.C. § 879 is unconstitutional because it authorizes nighttime execution of search warrants in any case involving illegal drugs.  This argument is based on the Supreme Court's holding in *Richards v. Wisconsin*, 520 U.S. 385 (1997).  The Court had previously ruled in *Wilson v. Arkansas*, 514 U.S. 927 (1995), that the Fourth Amendment incorporates the "knock and announce" principle established at common law.  In *Richards*, the Court considered the validity of a court-made rule which authorized a "no knock" entry for execution of a search warrant in any case involving illegal drugs.  The Court held that this blanket exception violated the Fourth Amendment and that the circumstances in each individual case should be evaluated to determine if a no knock entrance was justified.  *Richards*, 520 U.S. at 394.

In the brief, defendant argues for an analogous approach with regard to nighttime

---

[4]Mr. Tucker seems to argue in his brief that Rule 41(c)(1) must control over section 879 in spite of *Gooding*.  Of course, we are bound by *Gooding* and must reject any such suggestion.

execution of warrants to search for evidence of illegal drug activity. That is, he contends that an exception providing for nighttime execution of search warrants in all drug cases – which the language of section 879, as interpreted by the Court in *Gooding*, provides – would be unconstitutional, and that the need for a nighttime search must be shown in each case for the statute to survive Fourth Amendment scrutiny.

The circumstances presented here do not require us to decide whether section 879's blanket authority for nighttime searches in all drug cases is constitutional. Despite the apparent breadth of defendant's assertion that section 879 is unconstitutional, in his brief defendant asserts that if "reasons are shown for the necessity of executing the warrant at night, then the conditions of the Fourth Amendment are met and the statute no longer creates a blanket exception and can be read in harmony with the Constitution." Appellant's Brief at 19. Defendant thus makes it clear that he is really arguing that a narrowing construction of the statute is necessary to avoid a constitutional problem.

We note that the district judge reasoned that section 879 would be unconstitutional if construed as a blanket authorization for execution of search warrants at night in all drug cases.[5] Further, the government in its brief in this case expresses its agreement with the district judge's view, saying that "probable cause must be present to justify the nighttime execution of a warrant . . ."[6] Although that statement is susceptible of more than one

---

[5]Memorandum and Order at 13-15.

[6]Brief of Appellee at 9.

construction, the government also says that "even in light of § 879 and *Gooding*, a search can still be held to be unreasonable under a Fourth Amendment analysis when evidence does not exist to support the nighttime execution of a search."[7]

We also note that after *Gooding,* we held that the "element of a nighttime intrusion is one element in considering the reasonableness of the search." *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir. 1979). Thus in light of defendant's concession that a showing of necessity for nighttime execution would obviate constitutional concerns, and the government's concession that there must be some justification for execution of the search warrant at night, we proceed to determine if such a justification was present in this case.

The district court found: "At the time the decision was made to execute the search warrant, the officers had some concern that the residents of the trailer might be starting a methamphetamine cook given the purchase of the materials during the late night trip to Wal-Mart." Memorandum and Order at 4-5, ¶ 9. The judge further found that: "Such activity would endanger other nearby residents due to the danger of the methamphetamine processing." *Id*. at 18, ¶ 16.

We think that these findings of fact, which are not specifically challenged, provide the necessary justification for the nighttime search. It has been held that the danger of destruction or removal of the evidence is sufficient reason for nighttime execution of a

---

[7]Brief of Appellee at 10, n. 5.

search warrant, in part because such circumstances could even constitute exigent circumstances for a search without a warrant. *United States v. Stefanson*, 648 F.2d 1231, 1236 (9th Cir. 1981). *Cf. United States ex rel. Boyance v. Myers*, 398 F.2d 896, 899 (3d Cir. 1968) (search at night constitutionally unreasonable where no showing of risk that evidence would be removed or destroyed before morning). We agree with the holding of *Stefanson* that a substantial risk of destruction of the evidence would justify execution of a search warrant at night. The instant case presents even more compelling circumstances, where there was not just risk of destruction of the evidence but also risk of personal injuries and property damage due to the volatile nature of the chemicals and the process of methamphetamine manufacture. We hold that here the nighttime execution was reasonable under the Fourth Amendment.

Tucker's makes an oblique attack on the factual underpinning of the district court's decision, asserting that the officers had not observed any activity in the trailer house in the five or so hours preceding the execution of the warrant. Tucker also points to evidence that a methamphetamine cook takes several hours and that an entire methamphetamine laboratory is difficult to conceal or destroy. As for the lack of observed activity, the evidence was quite sketchy. The officers who testified at the suppression hearing were not asked whether they could be certain that lights were or were not burning, for example. We conclude that the evidence was sufficient, if only minimally so, to support the district court's finding that the officers were concerned that

the occupants might have begun the manufacturing process. Because the process itself is dangerous, it is of no importance that the likelihood that the suspects would intentionally destroy the lab might be small. As to the fact that the manufacturing process requires several hours for completion, that is not helpful to the defendant because it is the process, not its completion, that particularly presents the danger. The defense proffered no evidence as to whether the danger in the manufacturing process is uniform throughout or limited to a particular stage. In short, there was evidence to support the district court's finding that the officers decided to execute the search warrant when they did in order to reduce the danger to the occupants, themselves and others in the vicinity.

Tucker also argues that the fruits of the search should have been excluded because the affidavit for search warrant did not give any ground for nighttime execution. In this regard, we note first that Mr. Tucker's argument assumes without citation of authority that the Constitution requires that the magistrate issuing the warrant, as opposed to the officers executing the warrant, must decide on nighttime execution. We do not need to decide this question because the state judge in issuing the warrant at four a.m. and in providing for its execution "forthwith, within ninety-six (96) hours of its issuance" authorized the nighttime search conducted here.

The gist of defendant's argument as we perceive it, however, is that the affidavit submitted in support of the application for the search warrant failed to provide justification for nighttime entry. Here the defendant's argument fails because the officers

-15-

did, in our view, present to the state judge reasons for nighttime execution and received the judge's assent. The affidavit recited that the officers anticipated that they would encounter dangerous and toxic chemicals in a clandestine methamphetamine laboratory, and that a high risk of explosion would exist if the inhabitants of the property were to attempt to destroy the chemicals. It is true, as defendant points out, that these averments were made specifically to support a request for a no-knock entry, but we think that a common sense interpretation of these statements would lead a reasonable judge to understand that the officers also sought authority to enter the premises at night, especially given the urgency implied by presentation of the affidavit at approximately four a.m.

We hold that under these circumstances execution of the search warrant at night was not an unreasonable search within the meaning of the Fourth Amendment. Accordingly the order denying the motion for suppression is

**AFFIRMED**.