UNITED STATES of America, Plaintiff-Appellee,

v.

Samuel SHORTER, Jr., Defendant-Appellant.

No. 78–5248.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1979.

Decided June 21, 1979.

Rehearing Denied Aug. 20, 1979.

Richard J. Marco, Celebrezze & Marco, Cleveland, Ohio, for defendant-appellant.

James R. Williams, U. S. Atty., William J. Edwards, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS, Chief Judge, and ENGEL and MERRITT, Circuit Judges.

EDWARDS, Chief Judge.

This appeal requires the first interpretation in this circuit of the telephonic search warrant procedure adopted by Congress in 1977 on the recommendation of the United States Judicial Conference and the Supreme Court. Appellant claims that the terms of Fed.R.Crim.P. 41(c)(2) were not adhered to

in three aspects in the issuance of the warrant here complained of, and that the failures were material and prejudicial.

Defendant Shorter was convicted by a jury for robbing a bank, in violation of Title 18 U.S.C. § 2113(a), (d) and § 2 (1976). The facts, as established in the trial, indicated that three masked men robbed a bank in Youngstown, Ohio, taking nearly $20,000 and a .38 calibre revolver. The money included 16 bait bills, bank tickets and money wrappers, and the three bandits were seen escaping in a 1976 silver Pontiac Grand Prix which proved to have been stolen.

As a result of information furnished the FBI, Agent Nix of the FBI went to an address at 328 Wirt Street where, having been admitted, he found appellant Shorter and saw the Youngstown police who were with him arrest Shorter and remove him. The FBI agent had asked Shorter for permission to search the premises and had been denied it. Thereupon he sought an oral search warrant by telephone, pursuant to Fed.R.Crim.P. 41(c)(2). As a result of the search warrant, money, bait bills and bank wrappers were discovered, which items were offered in evidence against Shorter. This appeal argues solely that these items were illegally admitted at the trial because the search warrant was invalid due to failure of the FBI agent properly to follow the requirements of Fed.R.Crim.P. 41(c)(2).

It is appellant's contention that the facts and circumstances confronting the FBI agent were not such as to justify the issuance of a telephonic warrant under Rule 41(c), and that even if they were, the agent violated subsections 2(B) and 2(D) of the Rule.

As to the first of these issues Fed.R. Crim.P. 41(c)(2)(G) provides:

> **(G) Motion to suppress precluded.** —Absent a finding of bad faith, evidence obtained pursuant to a warrant issued under this paragraph is not subject to a motion to suppress on the ground that the circumstances were not such as to make it reasonable to dispense with a written affidavit.

We are unanimously of the view that this record discloses no bad faith on the part of the agent.

It is clear however that in two respects the procedure spelled out by Rule 41(c) was not followed. Agent Nix did not, as the Rule requires, fill out a search warrant form in advance of his telephone communication with the United States Magistrate, and the United States Magistrate did not administer the oath to the agent in advance of receiving the information which justified the use of the telephonic warrant procedure and probable cause for the search.

■ As to the first issue concerning the justification for the employment of the telephonic search warrant procedure, it is clear that Congress intended to place this determination in the discretion of the issuing magistrate absent proof of a showing of bad faith on the part of the government agents. Notes of Committee on Judiciary, Senate Report No. 95–354, Amendments Proposed by the Supreme Court, says in part:

> [S]ubparagraph (c)(2)(G) makes it clear that, absent a finding of bad faith by the government, the magistrate's judgment that the circumstances made it reasonable to dispense with a written affidavit—a decision that does not go to the core question of whether there was probable cause to issue a warrant—is not a ground for granting a motion to suppress evidence.
>
> S.Rep. No. 95–354, 95th Cong., 1st Sess. 1, 11, reprinted in [1977] U.S.Code Cong. & Admin.News, pp. 527, 535.

Agent Nix was dealing with a violent crime involving three armed men, and as of the time of the search, three men had been arrested. Staking the apartment would, of course, have been possible while the preferred written application for a search warrant was made. At that point, however, it would have been impossible to know whether or not there were confederates in the vicinity who had a considerable motivation in relation to the contents of that apartment. Several hours of delay involved in the normal process of written application for the warrant might have produced a confrontation which both sound police practice and an interest in public order would suggest avoiding. We find no bad faith on the part of Agent Nix in employing the telephonic procedures of Fed.R.Crim.P. 41(c)(2).

■ We also find no occasion to reverse the district court's denial of the motion to suppress because of Agent Nix's failure to fill out the "duplicate original warrant" in advance of his call to the magistrate. No claim is made here that the warrant employed by Nix differed in any material respect from the "original warrant" in the possession of the magistrate. This court has frequently cited and followed the common sense language and approach to search warrants of *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). *See United States v. Dudek*, 530 F.2d 684 (6th Cir. 1976), *aff'd* after remand 560 F.2d 1288 (6th Cir. 1977). In *Ventresca*, the Supreme Court said:

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> *Id.* 380 U.S. at 109, 85 S.Ct. at 746.

In accordance with the principle cited, we find the procedural error in preparation of the warrant in this case to be harmless within the meaning of Fed.R.Crim.P. 52(a).

■ Our concern in this appeal, however, focuses primarily upon the provision contained in Fed.R.Crim.P. 41(c)(2)(D) which in its first sentence says:

> [T]he Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. (Emphasis added.)

Appellant contends (and the government agrees) that the oath was not administered by the magistrate "immediately" and thus in advance of the agent's testimony. It is, however, clear that the oath was given later in the telephonic proceeding so as to relate back to the testimony already supplied.

There is case law which has validated such subsequent oaths in the instance where oral testimony was used to supplement a written application for a search warrant. In *Campbell v. Minnesota*, 553 F.2d 40, 42 (7th Cir. 1977), the Seventh Circuit said:

> Both detectives and Judge Anderson testified that the additional oral information to support the warrant was given under oath. The judge's deposition reflects uncertainty as to whether he administered the oath before or after the oral statements were given. The detectives testified the oath was administered after they had given the oral information, but before the warrant was signed, and that they understood the oath to pertain to both the oral statements and written affidavit in support of the warrant. Under *Frazier v. Roberts*, 441 F.2d 1224, 1228 (8th Cir. 1971), these oral statements would be considered sworn testimony since the officers understood the oath to relate back to them. While the exact language of the oath could not be recalled by the detectives, that is of less significance than what the men understood the words to mean.

> *Id.* at 42.

There is, however, an added dimension in the instance of a telephonic search warrant. As pointed out above, Congress clearly intended the oath to be administered *in advance* of the testimony given where face-to-face confrontation between witness and magistrate was impossible. The congressional purpose was doubtless to impress on the telephone caller the solemnity of the proceeding in spite of the lack of formal appearance before a court.

The Second Circuit, in upholding the telephonic search warrant procedure against direct attack, stressed the importance of the oath being given in advance of the testimony:

> An "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed. See *Frazier v. Roberts*, 441 F.2d 1224, 1228 (8th Cir. 1971); *cf.* Fed.R.Evid. 603; McCormick on Evidence § 245, at 582 (2d ed. 1972). We cannot accept Turner's argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone. The moral, religious and legal significance of the undertaking remains the same whether the oath taker and the witness communicate face-to-face or over the telephone.

> In a ritualistic sense, it may be that an oath taken over the telephone appears less formal or less solemn than one taken in the physical presence of the oath taker. The constitutionality of oaths does not depend, however, on such purely ritualistic considerations. In every meaningful sense, Nadel and Dalton were under oath. We hold that search warrant application procedures can constitutionally be brought into line with twentieth century technology.

> *United States v. Turner*, 558 F.2d 46, 50 (2nd Cir. 1977).

Further, the oath requirement is constitutional in origin, although the Fourth Amendment does not contain any specific reference to the time of administration:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S.Const. amend. IV.

An oath which relates back to statements made in the physical presence of a judicial officer may well serve to satisfy the constitutional command. The Supreme Court and Congress have, however, written a rule to allow the employment of modern technology unknown in 1789 in order to make search warrants more accessible to federal agents. In seeking to maintain the accuracy of the information furnished in a much less formal fashion, they certainly have reason to require compliance with as simple a command as that the telephonic oath be given "immediately." We believe the command of Fed.R.Crim.P. 41(c)(2)(D) speaks more of substance than procedure and must be obeyed.

Under these circumstances, we hold that the district court erred in failing to grant the motion to suppress the evidence seized under the warrant.

The judgment of the district court is vacated and the case is remanded to the district court for a new trial.

MERRITT, Circuit Judge, concurring.

The rule allowing search warrants to be issued on the telephone requires that the officer who requests the warrant on the telephone "shall prepare a document to be known as a *duplicate original warrant* and shall read such duplicate original warrant, verbatim, to the federal magistrate." The rule requires the federal magistrate on the other end of the line to have before him from the beginning the "original warrant" and to "enter, verbatim, what is so read to such magistrate on a document to be known as the original warrant."

After the officer on one end of the line gives the information from the warrant to the magistrate on the other end, the magistrate must then decide whether the oral information given is sufficient to permit the search, now precisely described on the "original warrant." If the magistrate decides to issue the warrant, the procedure is for him to direct "the person requesting the warrant to sign the federal magistrate's name on the duplicate original warrant" and for the federal magistrate then to "immediately sign the original warrant and enter on the face of the original warrant the exact time when the warrant was ordered to be issued."

In the instant case the officer who requested the warrant by telephone did not, in accordance with the rule, "prepare a document to be known as a duplicate original warrant and [then] . . . read such duplicate original warrant, verbatim, to the federal magistrate." Since the officer requesting the warrant did not fulfill his part under the rule, the magistrate did not, in accordance with the rule, "enter, verbatim, what [was] so read to such magistrate on a document to be known as the original warrant."

The correct handling of the "duplicate original warrant" and the "original warrant" is, it seems to me, the crucial portion of this new rule. In my mind, it is much more important than when the oath is administered. I would not reverse this case because the oath was administered during the telephone conversation rather than at the beginning, but I would reverse the case because the officer and the magistrate did not properly prepare and read information from the duplicate original warrant and enter such information on the original warrant.

The "duplicate original warrant" process is important because it requires the officer to write down, and therefore deliberate and consider in advance, the precise nature of the search to be undertaken. He may not simply pick up the telephone and call the magistrate. He must first get out pencil and paper, consider his actions, and write down the scope of the search with sufficient

particularity for the magistrate to know what he is authorizing. The law often requires writings. The purpose of such a requirement is to slow down the process and to require actors to deliberate before they act. I believe that this is the crucial part of the rule, and I would strictly enforce it.