**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur Joseph TRICKEY, Defendant-Appellant.**

**No. 82–1262.**

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1983.

Decided June 30, 1983.

Richard L. Lee, Jr. (argued), Midland, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Elizabeth A. Wild, Marcia Cooke (argued), Detroit, Mich., for plaintiff-appellee.

Before KEITH, MERRITT and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

In August 1980, the appellant, Arthur Trickey, approached Silas DeKalita and requested a loan of $15,000 in order for appellant to produce counterfeit money. In return, DeKalita would receive $75,000 in real currency. DeKalita contacted the United States Secret Service and, on September 8, 1980, he met with agent Hall and related his conversation with the appellant.

Following the instructions of agent Hall, DeKalita arranged several meetings between the appellant and Kelemen, an undercover agent. Appellant and agent Kelemen met and outlined a plan for distributing the counterfeit money. At a second meeting, appellant and Kelemen discussed the possibility of Kelemen contributing $15,000 or purchasing necessary equipment of approximately the same value. Appellant would not agree to allow Kelemen to purchase the equipment rather than providing the money; therefore, they could not reach an agreement. However, Kelemen indicated that he might participate in the distribution of the counterfeit money.

In early 1981, appellant discussed the possibility of producing counterfeit money with one Michael Beck, with the assistance of Beck's father. Beck agreed to assist in photographing the bills and in making plates from the negatives. On or about May 16, 1981, appellant showed DeKalita the backs of four counterfeit bills and told him that they were from the first batch that they had printed.

On the next day, the Secret Service agents began a surveillance of a building located at 2561 Swagger Road in Millington, Michigan. The building was apparently an outer building located on property where Richard Trickey, the appellant's nephew, resided. Appellant rented the smaller building from Richard Trickey. Upon obtaining a telephonic search warrant from Magistrate Walker, the agents proceeded to the building which was owned by appellant's nephew and executed the search warrant. This small building had no working plumbing facilities, no furniture, and the windows were boarded up. The kitchen had been converted into a dark room and upon conducting a search, the agents found and seized a printing press, a camera, paper, ink and various other printing materials. No counterfeit bills or direct evidence that counterfeit money had been produced on the premises were found, however.

Appellant and Richard Trickey were arrested at the scene on May 17, 1981 and

arraigned on a complaint the following day. This complaint was subsequently dismissed and, thereafter, appellant was indicted on July 23, 1981 and arraigned a week later, on July 30, on a charge of conspiracy to counterfeit. Appellant filed a motion to quash the indictment due to the government's failure to indict him within sixty days of his arrest. The motion to quash was denied.

Prior to trial, appellant filed a motion to suppress the evidence seized from the premises on the ground that the search warrant was invalid. He argued that the magistrate failed to place each person whose testimony formed a basis of the application for the warrant under oath. As such, the agents had failed to fully comply with the requirements of Federal Rule of Criminal Procedure 41(c)(2)(D) in obtaining the telephonic search warrant. The district court determined that the warrant was invalid on this basis. *Accord United States v. Shorter,* 600 F.2d 585 (6th Cir.1979). However, the court concluded that the appellant lacked standing to challenge the validity of the search because he had no legitimate expectation of privacy in the premises as required by *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

In *United States v. Salvucci, supra,* the Supreme Court abolished the notion that an individual charged with crimes of possession has "automatic standing" to challenge the validity of a search under the Fourth Amendment. The Court noted that mere legal possession of a seized good does not subject the possessor to Fourth Amendment deprivation. Rather, an illegal search only violates the rights of those who have "a legitimate expectation of privacy in the invaded place." 448 U.S. at 91–92, 100 S.Ct. at 2552–2553; *quoting Rakas v. Illinois,* 439 U.S. at 140, 99 S.Ct. at 429.

The government submits that the appellant had no legitimate expectation of privacy in the outbuilding because it was not maintained like a home or dwelling. Rather, it was maintained in a manner that was more akin to a business. In support of this

position, they rely on *United States v. Bailey,* 628 F.2d 938 (6th Cir.1980), and *United States v. Clayborne,* 584 F.2d 346 (10th Cir. 1978). While this Court recognizes that *Bailey* has some application in this context, we do not construe those cases involving beepers to have general applicability to a determination of whether the premises in the instant case are entitled to Fourth Amendment protections.

In *United States v. Bailey, supra,* this Court developed a two-tier analysis for purposes of determining when an individual may raise a Fourth Amendment challenge. The Court explained:

> First, where he knowingly has exposed information to public scrutiny, the Fourth Amendment does not apply. Second, even where an individual has exhibited a subjective expectation that certain information will remain private, the Fourth Amendment will not apply unless society is prepared to recognize that expectation as legitimate .... A defendant who asserts a Fourth Amendment challenge must meet both the subjective expectation and the legitimacy criteria.

628 F.2d at 941.

■ In the instant case, the appellant maintained his printing activity in an outbuilding that was located on residential property. He had boarded up the windows such that it was clear that he did not intend to expose this activity to the public. Rather, he exhibited both a subjective and an objective expectation that the information and activities conducted therein would remain private. Moreover, since appellant was the lessee of the premises, the activity which he exhibited an expectation of privacy for would certainly be recognized by society as legally justified. Clearly, both the owner and the lessee of the premises would be recognized by society as having a legitimate expectation of privacy as to the outbuilding.

■ Furthermore, the assertion that the premises were maintained in a manner similar to a business does not abolish the proprietor's Fourth Amendment protections. It merely makes such protections less signifi-

cant than they would be in the context of a home. The controlling factor in this inquiry is that the individual have a legitimate expectation of privacy in the premises. *Accord Rakas v. Illinois,* 439 U.S. 128, 143–48, 99 S.Ct. 421, 430–33, 58 L.Ed.2d 387 (1978). The appellant clearly has such a legitimate expectation in regard to the outbuilding and, therefore, he has standing to challenge the validity of the search warrant and to have the evidence suppressed during the trial. Accordingly, the judgment of the district court is REVERSED and REMANDED for a new trial.

KEITH, Circuit Judge, dissenting.

If this court were writing on a clean slate, I would agree that the defendant had standing to challenge a fourth amendment violation by authorities. However, the Supreme Court in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), held that only a person who has "a legitimate expectation of privacy in the invaded place" is entitled to challenge allegedly illegal searches (quoting *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978)). Because defendant had no legitimate expectation of privacy in the outbuilding, I dissent from the majority's holding that the evidence seized should be suppressed.

The test to be applied calls for a searching review of the underlying facts. The trial court must ask two questions:

(1) Is there a legitimate expectation of privacy?

(2) Was the procedure used by the police illegal?

*Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) (Blackmun, J., concurring). These are two analytically distinct questions, and a defendant can meet one prong of this test without necessarily fulfilling the other. Only when both prongs are met should the evidence be suppressed.[1]

The majority's attempt to analogize this case to other fourth amendment contexts is no substitute for the searching factual review called for by *Salvucci* and its progeny. *See United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (Blackmun, J., concurring) (case involving electronic surveillance device not analogous to case involving "open fields" doctrine). The facts reveal that this was neither a residence nor a business building. It was an outbuilding which was allegedly being rented from a relative. The building had been boarded up, but there was testimony to the effect that the defendant had opened up the doors to the building because he wanted people to come in. The windows were not covered during the day the building was searched. There were no indicia of residence since there was no running water, no bathroom facilities, no lighting, nor was there furniture of any kind. The only indication that a business enterprise was being maintained in the building was the printing paraphernalia set up in the kitchen. Nor is this a case in which the outbuilding adjoined the main house or facilities of the owner of the property. It appears to have been no more than an abandoned building next to a public thoroughfare which was being used for allegedly clandestine purposes.

Since the defendant did not treat the building in a way that demonstrated that he expected it to be private, I cannot agree that he had a legitimate expectation of privacy. *United States v. Bailey,* 628 F.2d 938 (6th Cir.1980). Nor is it clear that this is the type of building which society is willing to invest with privacy interests. *Id.* The fact that the defendant might have been renting the building from someone who owned it is not conclusive, since "no one circumstance is talismanic to the *Rakas* inquiry." *United States v. Haydel,* 649 F.2d 1152, 1154 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982). In sum, I agree with the district court that the defendant fails to meet the first prong of the test for standing under

---

1. I agree with the majority that the search was illegal under this court's holding in *United States v. Shorter,* 600 F.2d 585 (6th Cir.1979).

Since *Shorter* is controlling on this point, if the defendant has standing to challenge the search, the evidence must be suppressed.

the fourth amendment. I, therefore, dissent from the majority's opinion reversing the judgment in this case.