IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

April 19, 2022 11:48 AM
ST-2020-CR-00205
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** ) | |
| ) | **Case No. ST-2020-CR-00205** |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| **VALMON GLASFORD, JR.** ) | |
| ) | Cite as: **2022 VI Super 42** |
| Defendant. ) | |
| ) | |

**EUGENE JAMES CONNOR, JR., Esq.**
Virgin Islands Department of Justice
GERS Building
34-38 Kronprindsens Gade
St. Thomas, Virgin Islands 00802
*Attorney for People of the Virgin Islands*

**ALEXIA L. FURLOW, Esq.**
Office of the Territorial Public Defender
P.O. Box 6040
St. Thomas, Virgin Islands 00804
*Attorney for Defendant*

**MACKAY, KATHLEEN**, Judge

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** is before the Court on Defendant's Motion to Suppress, filed on February 24, 2021. The People filed an Opposition on September 7, 2021.

The motion came on for hearing on October 5, 2021. The People of the Virgin Islands (the "People") were represented by Assistant Attorney General Eugene James Connor, Jr., and case agent, Detective Brian Bedminster, also appeared. Defendant Valmon Glasford, Jr. ("Glasford" or "Defendant") appeared and was represented by Territorial Public Defender Paula D. Norkaitis[1]. Defendant Glasford seeks to suppress (1) physical evidence obtained in the search of the apartment

---

[1] Paula D. Norkaitis is no longer associated with the Office of the Public Defender. Assistant Public Defender Alexia L. Furlow, Esq., is now counsel of record.

of Defendant's girlfriend, Cathy Xavier ("Xavier") ("the apartment"); (2) Glasford's statements to police while in custody; and (3) out-of-court identifications of Glasford as well as any in-court identifications. The People oppose each of these arguments. For the reasons set forth herein, the motion will be denied.

## BACKGROUND AND PROCEDURAL POSTURE

Glasford was arrested on July 4, 2020, and faces charges of third degree assault against Cade McQuate, third degree assault against Mike Live Lewis, discharging a firearm, and reckless endangerment in the first degree—each of which carries a corresponding count of unauthorized possession of a firearm during the commission of the offense—and, finally, a charge of unauthorized possession of a firearm.

At the suppression hearing, the People called two witnesses: VIPD Detective Delberth Phipps, Jr. and VIPD Detective Brian Bedminster. The Defendant called three witnesses: VIPD Officer Angela M. Trant, VIPD Detective Vernon Carr, and VIPD Detective Brian Bedminster.

Glasford argues that VIPD failed to execute proper procedures when obtaining telephonic warrants to search the apartment and arrest Glasford; that VIPD lacked probable cause to obtain the warrants; and that since there was no lawful warrant, the search is invalid because Glasford's girlfriend did not provide consent to enter and search the apartment. Therefore, Glasford argues that any physical evidence obtained during the search must be suppressed. Glasford further contends that because he was arrested under an improper warrant, any statements he made subsequent to his arrest are fruit of the poisonous tree. He argues that the lack of evidence regarding the identifications from alleged victims Cade McQuate ("McQuate") and Mike Live Lewis

("Lewis") (together, the "alleged victims") as well as witness Sharifa Faulkner ("Faulkner")

renders the identification procedures unnecessarily suggestive and the identifications unreliable,

such that both the out-of-court and any subsequent in-court identifications must be suppressed.

Conversely, the People argue that Magistrate Judge Henry Carr found probable cause to

support the warrants and claim there is legal and policy preference for upholding the validity of

warrants, absent a showing of bad faith. The People further contend that Faulkner's identification

and the alleged victims' descriptions were sufficient to identify Glasford. Accordingly, the People

argue that the search, seizure, subsequent statements made by Glasford, and out-of-court

identification should not be suppressed and Glasford's motion should be denied.

## FACTS

The facts contained herein are determined pursuant to evidence taken during the

suppression hearing.

Late on the evening of July 3, 2020, VIPD received a report of an assault at American

Yacht Harbor ("AYH") in Red Hook, St. Thomas, Virgin Islands. Just after midnight on July 4,

2020, VIPD Officer Angela M. Trant responded to AYH. When Officer Trant got to AYH she

made contact with McQuate and Lewis who were visitors to St. Thomas.

McQuate and Lewis told Officer Trant they were walking across the AYH parking lot when

a white SUV nearly struck McQuate, that McQuate and Lewis both yelled at the driver, and the

driver thereafter exited the vehicle brandishing a firearm. They told Officer Trant the driver of the

vehicle struck Lewis in the face with the firearm, after which the firearm discharged next to

Lewis's face. Lewis sustained lacerations to his face above his left eyebrow. Officer Trant testified

the alleged victims did not know the driver's name since they were visitors to the island but they described the driver to her. At the suppression hearing, Detective Phipps testified the alleged victims identified the assailant as a Black male with a low haircut, wearing a white shirt. Officer Trant testified that, after her conversation with the alleged victims, Lewis's friends transported him to the hospital for treatment. In the early morning hours of July 4, 2020, Detective Phipps reported to Schneider Regional Medical Center ("SRMC") to interview McQuate and Lewis.

Detectives Phipps and Bedminster testified that during the same timeframe (late evening of July 3, 2020, and early morning of July 4, 2020), Detective Bedminster was assigned to investigate an armed robbery of a vehicle from two women, Faulkner and Xavier. Faulkner had made a police report that her vehicle was stolen at gunpoint and provided the license plate tag number for the vehicle. Using that information, Detective Bedminster was able to determine the vehicle was registered to a car rental company. Detectives Bedminster and Phipps also followed up with Faulkner on July 4, discussed below.

At approximately 8:30 or 9:00AM on July 4, 2020, Detectives Phipps and Bedminster went to AYH and obtained video surveillance footage of the parking lot from the previous night, which confirmed the events as McQuate and Lewis had described them. The surveillance footage depicted a white SUV, but the detectives were unable to identify the assailant from the footage alone, and the surveillance video did not show the tag number of the vehicle.

Later that day, at approximately 2:12PM, Detectives Phipps and Bedminster went to the Patriot Manor community, where Xavier leased the apartment, to speak further with Faulkner about the robbery of a vehicle she had reported the previous night. Faulkner provided more complete details of the events that had transpired the previous evening, including admitting that

her report of a stolen vehicle had been fabricated. She told VIPD that the driver of the white SUV was "Valmon", that she was in the vehicle with him during the assault at AYH, that Valmon had told her to file a false report of a stolen vehicle, and that Xavier was Valmon's girlfriend. Faulkner confirmed that Valmon had a gun in his possession and had placed it in a bag in the vehicle when they drove to the apartment after the AYH incident; Faulkner did not know whether there was a gun inside the apartment but said it was possible. After speaking with Faulkner, the detectives determined the report of a stolen vehicle to be false and shifted focus to the assault at AYH.

Thereafter, Detectives Bedminster and Phipps applied for telephonic warrants to arrest Glasford and to search Xavier's apartment at Patriot Manor. Ultimately, the detectives reached Magistrate Judge Henry Carr by telephone. Magistrate Carr placed the detectives under oath, and they then explained the details of the developing case. Based on the call with the detectives, Magistrate Carr found probable cause for the search of the apartment at Patriot Manor and the arrest of Valmon Glasford.

The search warrant[2] was executed on July 4, 2020, at approximately 5:00 or 6:00PM. Detective Phipps testified that his supervisor, the deputy chief, and six or seven Special Response Team ("SRT") officers were all present at the scene. In total, the detectives testified that there were more than ten VIPD law enforcement officers present. The SRT officers executed the warrant.

The officers searched the apartment and found pieces of a deconstructed firearm hidden in various food products, including crackers and peanut butter containers.[3] Detective Vernon Carr testified that he was present during the search and his role was to assess and collect evidence. He

---

[2] Detective Bedminster testified that VIPD did not have a hard copy of the warrant at the time of the search.
[3] Six images of the disassembled firearm as they were found in the apartment were admitted into evidence as People's Exhibits M-4 through M-9.

said he took photographs of the items taken but did not list the items. Detective Carr testified that there was a scribe present, writing down the items seized, but he could not remember who that was.[4] Detective Bedminster testified that it was his responsibility as case manager to compile an inventory list, but that he does not have one.

After the search, the detectives traveled to the Special Operations Bureau where they interviewed Faulkner, Xavier, and Glasford.[5] At that time, the forensics team took DNA and fingerprints from Glasford as part of the intake process for a felony arrest. Glasford's signed Warning as to Rights form was admitted into evidence as People's Exhibit M-2. Glasford signed and dated the Waiver section within the Warning as to Rights form—acknowledging that he was read his rights and then waiving them and agreeing to make a statement—at 9:05PM on July 4, 2020.[6]

During Glasford's initial hearing on July 6, 2020, Magistrate Carr announced that his recording device malfunctioned during the detectives' call applying for telephonic warrants, and as a result the call was not recorded.[7] Magistrate Carr further stated that both detectives had been placed under oath and that the telephone conversation on July 4 included essentially what is set forth in the officers' affidavit in support of the warrant. Magistrate Carr prepared written notes of the details of the phone call, dated July 8, 2020 and admitted as part of People's Exhibit M-1. The

---

[4] None of the detectives could recall who was the scribe at the search of the apartment on July 4, 2020.

[5] Detective Phipps testified that VIPD advised all three persons of their rights and presented them with waivers to sign, prior to talking with them.

[6] Since Glasford has moved to suppress his statement, the Court deduces that he made a statement. However, the contents of Glasford's statement were not discussed during the suppression hearing. Detective Phipps testified that the statement was voluntary, and nothing was offered to Glasford in exchange for his statement.

[7] These statements are memorialized in pages 23 through 25 of the transcript of Glasford's initial hearing, admitted as Defendant's Exhibit M-4.

notes state that Magistrate Carr found sufficient evidence that a crime had been committed and that Glasford was the individual who committed that crime.

At the suppression hearing, Detectives Phipps and Bedminster testified that they provided Magistrate Carr the following information during the July 4, 2020 telephone call: a description of the vehicle from the AYH parking lot; McQuate and Lewis's explanation of the driver's attempt to strike McQuate with the vehicle and then assaulting Lewis with a firearm; the detectives reviewed the surveillance footage, which matched the events described by McQuate and Lewis; the false police report regarding a stolen vehicle of the same make, model, and color as the car driven by the assailant in the AYH parking lot; Faulkner's identification of Glasford as the driver and assailant; and the information from Faulkner that Xavier was Glasford's girlfriend and that following the incident Glasford went to the apartment at Patriot Manor. However, both detectives testified that they did not transmit a proposed affidavit and warrant to Magistrate Carr before they made contact with him by telephone, nor did they transcribe their explanation of the events or transmit a proposed written warrant to Magistrate Carr after obtaining permission to conduct the search and arrest Glasford.

During the suppression hearing, Detective Bedminster also admitted that he failed to complete the return attached to the warrant and that he never provided a physical copy of the warrant, or an inventory of items taken or searched to Xavier, following the search of her apartment.

## DISCUSSION

### I.  The warrants are valid, despite VIPD's procedural failings, so the Court will not suppress the physical fruits of the search and seizure.

The Fourth Amendment to the United States Constitution establishes that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954. *People v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87–88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1).

A warrantless search or seizure of a residence is *per se* unreasonable unless an exception applies. *Thomas v. People*, 63 V.I. 595, 605 (V.I. 2015) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). To conduct a reasonable Fourth Amendment search, a judge or magistrate generally must issue a warrant upon a finding of probable cause that describes, with particularity, both the place to be searched and the persons or things to be seized. *Nicholas v. People*, 56 V.I. 718, 738 (V.I. 2012). Probable cause for issuance of a search warrant requires more than mere suspicion, but less than evidence that would justify a conviction. *People of the Virgin Islands v. Hardcastle*, 55 V.I. 93, 97 (V.I. Super. Ct. 2011) (citing *Gov't of the Virgin Islands v. Rijos*, 6 V.I. 475, 486-87 (D.V.I. 1968)). When issuing a search warrant, a judicial officer's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *People of the Virgin Islands v. Olive*, 2019 VI Super 51, ¶ 12 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Fourth Amendment's "commands, like all constitutional requirements, are practical and not abstract", such that the "procedural error in preparation of a warrant . . . [is] harmless." *U.S. v. Shorter*, 600 F.2d 585, 587 (6th Cir. 1979).

The United States Supreme Court has held that typically, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" *U.S. v. Leon*, 468 U.S. 897, 920 (1984) (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, C.J., concurring)). A warrant issued by a magistrate typically "suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." *Id.* at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823, n.23 (1982)).

The proponent of a motion to suppress has the burden to show his Fourth Amendment rights were violated by the search or seizure. *People of the Virgin Islands v. Gerald*, 2020 VI Super 77U, ¶ 7 (citing *United States v. Murray*, 53 V.I. 831, 842 (D.V.I. Aug. 2, 2010)).

### a. The procedural deficiencies in obtaining the telephonic warrants did not render the warrants invalid.

Glasford makes several arguments regarding the "warrantless search" of the apartment. Therefore, as a threshold matter, the Court will assess the validity of the underlying warrants for the search of the apartment and the arrest of Glasford, obtained telephonically, pursuant to the Virgin Islands Rules of Criminal Procedure.[8]

---

[8] The Court finds Magistrate Carr issued both a search warrant of the apartment and an arrest warrant for Glasford. *See* Notes on Electronic Warrant (Valmon Glasford), submitted in People's Exhibit M-1.

Rules 4-1 and 41(d) and (e) of the Virgin Islands Rules of Criminal Procedure set forth the requirements for warrants granted by telephone or other electronic means.

The pertinent portions of V.I. R. CRIM. P. 4-1(b) contain the following procedural requirements: (1) the applicant must prepare a proposed duplicate original warrant and read, or otherwise transmit, its contents verbatim to the judge; (2) the judge must place the applicant under oath to attest to the contents of a written affidavit and to consider any additional testimony or exhibits; (3) if considering any additional testimony or exhibits, the judge must have the testimony recorded verbatim by an electronic recording device, by a court reporter, or in writing; (4) if additional testimony or exhibits are considered, the judge must have any recording or reporter's notes transcribed, have the transcription certified as accurate, and file it; (5) the judge must sign any other written record, certify its accuracy, and file it; and (6) the judge must make sure the exhibits are filed.[9]

To issue the telephonic warrant, the judge must sign the original documents, enter the date and time of issuance, and transmit the warrant to the applicant or direct the applicant to sign the judge's name and enter the date and time on the duplicate original. V.I. R. CRIM. P. 4-1(b)(1)-(6). Rule 41 also empowers law enforcement to obtain a warrant through telephonic means, reiterating the same procedural requirements listed within V.I. R. CRIM. P. 4-1.[10]

---

[9] There are additional procedural requirements within V.I. R. CRIM. P. 4-1 not mentioned here because they are not relevant to this analysis.

[10] V.I. R. CRIM. P. 41(d)(3) and (e) include substantively the same requirements as V.I. R. CRIM. P. 4-1. Therefore, this Court will look to interpretations of both rules. For reference, the relevant portions of V.I. R. CRIM. P. 41 state:
> "(d)(3) Requesting a Warrant by Telephonic or Other Means. In accordance with Rule 4.1, a judge may issue a warrant based on information communicated by telephone or other reliable electronic means.
> . . .
> (e)(5) Warrant by Telephonic or Other Means. If a judge decides to proceed under Rule 41(d)(3), the following additional procedures apply:

Because Virgin Islands courts have not yet interpreted the sections of V.I. R. CRIM. P. 4-1 and 41[11], which are applicable in this matter, this Court will look to federal interpretations of the rules as persuasive authority.[12] The Virgin Islands District Court has held that "[f]ailure to comply with all the requirements of Rule 41 does not . . . necessarily compel the suppression of evidence uncovered through the procedurally deficient telephonic warrant." *United States v. Mejia*, 2016 WL 7191630, at *8 (D.V.I. Dec. 10, 2016) (citing *United States v. Rome*, No. 2011-35, 809 F.2d 665, 667-668 (10th Cir. 1987) (discussing Rule 41 prior to its amendment in 2011)). "A technical violation of a state procedural rule does not automatically rise to the level of a Fourth Amendment

---

(A)Preparing a Proposed Duplicate Original Warrant. The applicant must prepare a 'proposed duplicate original warrant' and must read or otherwise transmit the contents of that document verbatim to the judge.

(B)Preparing an Original Warrant. If the applicant reads the contents of the proposed duplicate original warrant, the judge must enter those contents into an original warrant. If the applicant transmits the contents by reliable electronic means, that transmission may serve as the original warrant.

(C)Modification. The judge may modify the original warrant. The judge must transmit any modified warrant to the applicant by reliable electronic means under Rule 41(e)(3)(D) or direct the applicant to modify the proposed duplicate original warrant accordingly.

(D)Signing the Warrant. Upon determining to issue the warrant, the judge must immediately sign the original warrant, enter on its face the exact date and time it is issued, and transmit it by reliable electronic means to the applicant or direct the applicant to sign the judge's name on the duplicate original warrant."

[11] The Notes of Advisory Committee on FED. R. CRIM. P. 4.1 state, in pertinent part, "[t]he procedures that have governed search warrants 'by telephonic or other means,' formerly in Rule 41(d)(3) and (e)(3), have been relocated to this rule, reordered for easier application, and extended to arrest warrants, complaints, and summonses."

[12] V.I. R. CRIM. P. 4-1 is substantively identical to the corresponding FED. R. CRIM. P 4.1. When Virgin Islands courts have not yet interpreted a local rule of procedure, but the rule is substantively equivalent to the federal rule, the Virgin Islands Supreme Court has stated that it will "review interpretations of [the] federal rule . . . because [the] local rule . . . mirrors the federal version." *Coulter v. People*, 2021 VI 17, ¶ 24 n.3 (citing *People v. Ventura*, No. SX-2012-CR-076, 2014 V.I. LEXIS 53, at *56 (V.I. Super. Ct. July 25, 2014) (stating, in pertinent part, that "courts typically view . . . earlier constructions of borrowed rules as persuasive, not mandatory")). Therefore, this Court will consider interpretations of FED. R. CRIM. P. 4.1as persuasive authority. *See id.* This Court notes however that FED. R. CRIM. P. 41 no longer includes detailed requirements for a telephonic warrant as the current V.I. CRIM. R. 41. A previous version of FED. R. CRIM. P. 41 was identical to the current version of V.I. CRIM. P. 41, but a 2011 amendment to the federal rule relocated the relevant telephonic warrant requirements to current FED. R. CRIM. P. 4.1. Accordingly, V.I. R. CRIM. P. 41(d) and (e) are not substantively identical to the current version of FED. R. CRIM. P. so the Court will not utilize interpretations of the current federal rule in its analysis

violation requiring suppression of the evidence seized." *United States v. Brookins*, 413 Fed. Appx. 509, 512 (3d Cir. 2011) (citing *Virginia v. Moore*, 553 U.S. 164, 173 (2008)). "Rather, [the movant] must demonstrate that the technical violations amounted to a constitutional deprivation; mere conclusory allegations are insufficient." *Id.* at 513 (citing *United States v. Voigt*, 89 F.3d 1050, 1071 n.10 (3d Cir. 1996)). "The suppression remedy remains viable where a sufficient showing of prejudice is made, that is, prejudice in the sense that it offends concepts of fundamental fairness or due process." *United States v. Hall*, 505 F.2d 961, 964 (3d Cir. 1974).

In the instant matter, the Court notes several deficiencies in the application and subsequent grant of a telephonic warrant: (1) although an attempt was made to record the call, the call was not recorded, in violation of V.I. R. CRIM. P. 4-1(b)(2)(B)(i), and (2) neither VIPD nor Department of Justice personnel transcribed their statement prior to relaying it to Magistrate Carr or otherwise transmitted a proposed affidavit or warrant to the magistrate, thereby violating V.I. R. CRIM. P. 4-1(b)(3) and 41(e)(5)(A).

However, there is no evidence to suggest that the procedural failures somehow contributed to an alteration or manipulation of the facts yielding Magistrate Carr's finding of probable cause and thereby the issuance of the warrants. Even though the court failed to record the telephone call, Magistrate Carr stated from the bench that he attempted to record the call, that the information provided by Detectives Bedminster and Phipps on July 4, via telephone, was "essentially" the same as the information provided within the probable cause affidavit, and from those facts the magistrate found sufficient probable cause to issue the warrants. The Court cannot identify any clear prejudice against Glasford, as the deficiencies of the telephonic warrant process were technical failures of procedure. Accordingly, the Court finds that Glasford has not carried his burden, as the movant,

to prove there was a clear constitutional violation. *Brookins*, 413 Fed. Appx. at 513. Additionally, the failure to transmit or read verbatim a proposed original warrant to the magistrate judge was a "harmless" error and does not require invalidation of the warrant. *See, e.g., Shorter*, 600 F.2d at 587. Therefore, the Court will not invalidate the search or arrest warrants on the basis of this procedural failure.

### b. There was no showing of bad faith in the detectives' decision to obtain telephonic warrants.

Rule 4-1(c) provides that absent a showing of bad faith, the evidence obtained from a warrant issued telephonically under V.I. R. CRIM. P. 4-1 is not subject to suppression simply on the ground that issuing the warrant telephonically was unreasonable under the circumstances. V.I. R. CRIM. P. 4-1(c). The circumstances of this case were as follows: the events transpired on July 4, a national holiday on which government operations are generally paused; the evidence at issue was a firearm, which, in the interim period between the AYH assault and the search and seizure could have been used for further violence or otherwise hidden or destroyed; and by the time the detectives sought the telephonic warrant, a short time that had already passed since the alleged assault occurred. There is no indication that the detectives acted in bad faith when they opted to obtain the warrant telephonically. Accordingly, the Court finds no evidence of bad faith in the choice to obtain a telephonic warrant, and therefore finds the detectives' decision to obtain the telephonic warrant was reasonable.

### c. VIPD's failure to complete the return and inventory list are merely procedural, and do not invalidate the search.

Glasford also argues that VIPD failed to complete and return the required return attached to the warrant[13], and the required inventory list, to the judge, as is required by V.I. R. CRIM. P. 41. The People did not respond to this argument, but Detective Bedminster testified at the suppression hearing that this was his first ever application for and execution of a warrant and it was a genuine mistake that he forgot to complete the return.

Rule 41(f)(1)(D)[14] requires the officer executing the warrant to promptly return it, together with a copy of the inventory list, to the judge designated on the warrant, however the rule does not expressly address any remedies flowing from a failure to adhere to those procedures. V.I. R. CRIM. P. 41(f)(1)(D). While Virgin Islands courts have not yet addressed the issue of failing to execute the return and inventory, other courts' findings are persuasive to this Court's analysis. Interpreting FED. R. CRIM. P. 41, other courts have held the failure to promptly execute the return and inventory list was a merely "ministerial" failure and that did not affect the validity of the search. *See, e.g.,* *United States v. Wilson,* 451 F.2d 209, 214 (5th Cir. 1971) (citing *United States v. Haskins,* 345 F.2d 111 (6th Cir. 1965); *Reisgo v. United States,* 285 F. 740 (5th Cir. 1923)), *cert. denied,* 405 U.S. 1032 (1972); *see also United States v. Lee,* 427 F.Supp. 318 (E.D. Ky. 1977), *rev'd on other grounds,* 581 F.2d 1173 (6th Cir. 1978); and *United States v. Shinderman,* 2006 U.S. Dist. LEXIS

---

[13] The incomplete return was submitted as Defendant's Exhibit M-3.

[14] V.I. R. CRIM. P. 41(f)(1)(D) states in pertinent part: "The officer executing the warrant must promptly return it-- together with a copy of the inventory--to the judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant . . ."

33323 (D. Me. May 24, 2006), *amended* 432 F.Supp. 2d 149 (D. Me. 2006). However, the Third Circuit found that a failure to complete a return and inventory were *not* ministerial when law enforcement deliberately and advertently did not follow the rule. *U.S. v. Eastman*, 465 F.2d 1057, 1063 (3d Cir. 1972).

The Third Circuit stated that Congress did not intend "every violation of the procedures in [Rule 41], however insignificant and however lacking in consequences, should give rise to the remedy of suppression." *Hall*, 505 F.2d at 964. However, the Third Circuit also said that Congress likely would not enact a rule which expressly requires actions on the part of the government, without also intending a remedy for violations of that rule. *Id.* Balancing these two considerations, the Third Circuit found that a motion to suppress should be granted only when the defendant demonstrates prejudice from the failure to execute the return and inventory. *Id.* (citing *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971); *United States v. Kennedy*, 457 F.2d 63, 67 (10th Cir.)). In these circumstances, prejudice occurs when the violation causes offense to concepts of fundamental fairness or due process. *Id.*

All of the detectives agree there was a scribe on the scene at the apartment, writing down the items seized. However, none of the detectives recalled who had that duty. Detective Vernon Carr took photographs of the firearm pieces seized, admitted as People's Exhibits M-4 through M-9. The detectives further agree that they failed to execute the return and inventory list and provide it to Magistrate Carr. However, the Court finds no indication that the detectives intentionally and deliberately failed to return the required documents. Indeed, Detective Bedminster testified this was the first warrant he was involved in executing. He described his failure as an honest mistake and testified that his supervisors subsequently educated and scolded him for the oversight.

Accordingly, the Court finds the procedural failures were not deliberate, and thus were "ministerial." Additionally, the Court sees no demonstration from Glasford that he was prejudiced by the violation. Therefore, the detectives' failures do not rise to the level of constitutional violations to Glasford. Accordingly, VIPD's failures to complete the return and the inventory list do not invalidate the search or the underlying warrant.

### d. Glasford's arguments regarding lack of probable cause and lack of consent to enter and search the apartment are moot, since the warrant is valid.

Glasford argues at length that there was insufficient probable cause for VIPD to perform a *warrantless* search of the apartment, claiming, therefore, that the fruits of the search must be suppressed for lack of probable cause. Glasford further argues that because neither Xavier nor Glasford granted consent for VIPD to enter and search the apartment, the entry and subsequent search were unlawful so the physical evidence seized must be suppressed. However, Magistrate Carr found probable cause from the facts provided by the detectives on July 4, 2020, and the Court finds the telephonic warrants were properly issued—despite some procedural deficiencies. As established in *U.S. v. Leon*, law enforcement officers are entitled to rely upon a judge's finding of probable cause upon issuance of a warrant. *Leon*, 468 U.S. at 920. Accordingly, the Court finds Glasford's arguments of lack of probable cause and lack of consent are moot. Therefore, the Court will not address these arguments.

Although Detectives Phipps and Bedminster as well as Magistrate Carr made some technical errors of procedure in their application for and Magistrate Carr's grant of the telephonic warrants, this Court finds that none of the errors fundamentally violated Glasford's constitutional rights. Therefore, the Court upholds the warrants and Glasford's motion to suppress the physical evidence obtained in the search of Xavier's apartment on July 4, 2020, will be denied.

## II.    Defendant's post-*Miranda* statement will not be suppressed.

### a.  Legal Standard

The Fifth Amendment to the United States Constitution states, in pertinent part, "no person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . ." U.S. CONST. amend. V. The Fifth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954. *Simmonds v. People*, 59 V.I. 480, 491 (V.I. 2013) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561).

A suspect can waive their rights by "choosing to give a statement after the required warnings have been given." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981)). Waiver of one's *Miranda* rights must be "knowing, voluntary, and intelligent when made as a product of the defendant's uncoerced choice at a time when the defendant understood the nature of the rights being waived and the consequences of the waiver." *People v. Assam*, No. ST-2016-CR-00232, 2017 V.I. LEXIS 157, at *3 (V.I. Super. Ct. Nov. 14, 2017) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

In a motion to suppress a statement of the accused, the burden ordinarily rests upon the defendant to establish that the evidence sought to be suppressed was illegally obtained. *Assam*, 2017 V.I. LEXIS 157, at *2. Once a violation of *Miranda* is "claimed and the accused alleges facts demonstrating that the accused was in custody and subject to interrogation, the burden shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda* and that the statement was voluntary." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

### b. There is no indication that Glasford's statement was untimely or involuntary.

Glasford argues that the statements he made to VIPD following his arrest, pursuant to the telephonic arrest warrant, must be suppressed because those statements were obtained in violation of his constitutional rights. Glasford contends that the waiver of his *Miranda* rights was neither timely nor voluntary because there is no evidence regarding the circumstances involved at the time of the statement. Glasford also maintains that his statement must be suppressed as fruit of the poisonous tree, because he claims his arrest was pursuant to an invalid warrant. The People counter that Glasford's statements were voluntarily and knowingly given after his rights had been thoroughly explained to him and he signed a Warning as to Rights Form[15, 16]. The People further state there is no suppression issue regarding Glasford's statements.

This Court agrees with the People. There are no facts or any other indication that Glasford's *Miranda* waiver and subsequent statement to VIPD were coerced, involuntary, or untimely, and Glasford does not present any evidence or argument to the contrary. Detective Phipps testified that VIPD advised Glasford of his rights prior to taking his statement, the statement was voluntary, and nothing was offered to Glasford in exchange for making a statement. Glasford signed and dated the Warning as to Rights Form on July 4, 2020, at 9:05PM, in the presence of three witnesses, and

---

[15] The Warning as to Rights Form, admitted in this matter as People's Exhibit M-2, lists the following rights: "You must understand your rights before we ask you any questions; you have the right to remain silent; anything you say can be used against you in court, or other proceedings; you have the right to talk to a lawyer for advice before we question you and to have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court free of charge and at no cost to you. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time until you talk to a lawyer."

[16] The "Waiver" section of the Warning as to Rights Form reads as follows: "I do not want a lawyer at this time. I understand and know what I am doing, no promises or threats have been made to me, and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights and I am willing to make a statement and answer questions."

there is no indication that there were any procedural failures in reading Glasford his rights or that his waiver was not voluntarily given. Additionally, because this Court finds that the telephonic warrants were in fact valid, Glasford's argument for suppression of the statement as fruit of the poisonous tree is rendered moot.

Therefore, the Court finds no basis on which to suppress Glasford's post-*Miranda* statement.

### III. The identifications of defendant will not be suppressed.

#### a. Legal Standard

The Fourteenth Amendment to the United States Constitution states, in pertinent part, that "no state shall . . . deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, §1. The Due Process Clause is made applicable to the Virgin Islands pursuant to § 3 of the Revised Organic Act. *Richards v. People*, 53 V.I. 379, 384 n.2 (V.I. 2010) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561).

The V.I. Supreme Court has adopted a two-part test for reviewing out-of-court identifications for due process violations under the Fourteenth Amendment, originally articulated by the United States Supreme Court. *See Richards*, 53 V.I. at 384-87 (citing first *Stovall v. Denno*, 388 U.S. 293 (1967), then *Neil v. Biggers*, 409 U.S. 188 (1972), and *Manson v. Brathwaite*, 432 U.S. 98 (1977)). As *Richards v. People* states, "[f]irst, [the court] determines whether the identification procedure was unnecessarily suggestive, and, if so, [it] must decide whether the identification itself was nevertheless reliable." *Id.* at 387 (citing *Garcia v. Gov't*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006)).

### b. The identification procedures were not impermissibly or unnecessarily suggestive.

To determine whether an identification procedure was unduly suggestive, the Court must first assess whether it was "unnecessarily" or "impermissibly" suggestive, "which requires the Court to assess the degree of suggestiveness presented by the identification procedure actually used in this case, and whether the police had good reason not to use less suggestive procedures." *Potter v. People*, 56 V.I. 779, 789 (V.I. 2012) (citing first *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991), then *Richards*, 53 V.I. at 387). The "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Richards*, 53 V.I. at 385 (citing *Biggers*, 409 U.S. at 190 (1972)). Unnecessary or impermissible suggestiveness has been found when a witness is presented with only a single suspect for identification purposes, or when a suspect included in a lineup is the only person with a certain characteristic previously identified by the witness. *See Richards*, 53 V.I. at 388; *People v. Frett*, 2019 VI Super 141U, ¶16. Alternatively, an identification process was found not to be unnecessarily suggestive or in violation of the defendant's due process rights when the defendant had been acquainted with the witness(es) prior to the incident, and therefore the witness(es) already knew what the defendant looked like. *See Davis v. People*, 74 V.I. 475, 483-84 (V.I. 2021).

Glasford argues that the lack of evidence about the out-of-court identifications and descriptions from McQuate, Lewis, and Faulkner shows the processes were unnecessarily suggestive. Glasford argues there are no statements from McQuate and Lewis, and they never saw a photograph or had the opportunity to identify the assailant. He further argues that Faulkner's identification was not clear enough to identify Glasford, since she only stated his first name, "Valmon." The People counter that the identifications were reasonable because the alleged

victims' descriptions adequately matched Glasford's appearance and the vehicle driven, and events they described aligned with the surveillance footage obtained from AYH. The People further note that Faulker was in the car when Glasford committed the assault at AYH, she identified "Valmon" as the assailant, stated that Glasford was Xavier's boyfriend, and told VIPD that Glasford was staying at the apartment at Patriot Manor.

Glasford does not make a specific argument for why identification was unnecessarily or impermissibly suggestive, and the Court does not identify any concerning procedures on the part of VIPD in the identification process. The facts indicate that Faulkner was riding in the white SUV at the time the assailant was driving in the AYH parking lot and ultimately assaulted McQuate and Lewis. Faulkner also indicated she knew the driver of the SUV and identified him as "Valmon". Therefore, there is no indication of suggestiveness for Faulkner's identification because she was previously acquainted with Defendant.

As for McQuate and Lewis, they described the driver of the white SUV to Detectives Phipps and Bedminster, and accurately described the events that transpired in the AYH parking lot, which the detectives confirmed using the AYH surveillance footage. However, the alleged victims did not ultimately have an opportunity to identify Glasford as the assailant. Accordingly, there is no indication of suggestiveness for the alleged victims' identification since they merely described the assailant and the AYH assault to detectives.

Because the Court finds the identifications made in this matter were not "unnecessarily or impermissibly suggestive," the Court need not reach the question of reliability, which is the second prong of the relevant identification test. *Richards*, 53 V.I. at 387. Accordingly, the Court finds that

the identifications and descriptions provided by Faulkner as well as the alleged victims will not be suppressed.

### c. Any in-court identifications will not be suppressed.

Under the Fourteenth Amendment, pretrial and in-court identifications are governed by the same tests. *Richards*, 53 V.I. at 393. Therefore, because the out-of-court identifications will not be suppressed, the Court finds that future in-court identifications also will not be suppressed.

### CONCLUSION

For the reasons discussed herein, the Court denies Glasford's motion to suppress. The Court finds the telephonic search and arrest warrants, while procedurally imperfect, were valid and sufficiently supported by probable cause, such that there is no ground upon which to suppress the fruits of the search or arrest. There is also no indication that Glasford's post-*Miranda* statement was involuntary or untimely, so the statement will not be suppressed. Finally, the out-of-court identifications of Glasford were not unnecessarily suggestive, so they will not be suppressed. Therefore, the physical evidence seized from the apartment, Glasford's post-*Miranda* statement, and the identifications by Lewis, McQuate, and Faulkner are admissible.

An order consistent herewith will immediately follow.

DATED: April __19__, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 04 / 20 / 22